IN THE COURT OF APPEALS OF TENNESSEE

AT KNOXVILLE

**FILED**

February 24, 2000

Cecil Crowson, Jr.
Appellate Court Clerk

E1998-00732-COA-R3-CV

| | |
|---|---|
| STEVE MYERS, | ) C/A NO. 03A01-9812-CV-00407 |
| | ) |
| Plaintiff-Appellant, | ) |
| | ) |
| | ) |
| | ) APPEAL AS OF RIGHT FROM THE |
| v. | ) CLAIBORNE COUNTY CIRCUIT COURT |
| | ) |
| | ) |
| | ) |
| DANNY WILSON and ELMO MAYES, | ) |
| | ) HONORABLE CONRAD TROUTMAN, JR., |
| Defendants-Appellees. | ) JUDGE |

For Appellant                          For Appellees

LYNN TARPY                             JOHNNY V. DUNAWAY
THOMAS M. LEVEILLE                     LaFollette, Tennessee
Hagood, Tarpy & Cox, PLLC
Knoxville, Tennessee


O P I N I O N


AFFIRMED AND REMANDED                              Susano, J.

This case arises out of a dispute over a 30-foot right-of-way that crosses the property of the plaintiff, Steve Myers, and provides access to a state highway from the property owned by the defendant, Danny Wilson, which property is leased to the defendant, Elmo Mayes.  Wilson was granted an easement over Myers' property in a deed providing that Wilson was entitled to "the right of the unobstructed use of the private road."  Myers brought this action seeking a declaratory judgment, damages, and injunctive relief against the defendants after two gates on the right-of-way were destroyed.  The trial court denied Myers' request for damages and an injunction, finding that the two gates interfered with Wilson's "unobstructed use."  Myers appeals, raising the following issues:

> 1.  Is Myers barred from maintaining gates across the road by the express language of the grant of the easement?
>
> 2.  If the proper construction of the grant of the easement is that it is to be free of gates, did Wilson and Mayes abandon the right to have the easement free of gates?

I.

In 1987, Wilson purchased a parcel of farmland from his father, Hoyt Wilson.  The tract -- known as Tract 27 -- is one of 28 tracts in the subdivision of property formerly known as Colonial Acre Farm.  Wilson's deed provides as follows:

> Party of the second part, his heirs and assigns along with other abuting [sic] property owners, are given *the right of the unobstructed use of the private road* through the Colonial Acre farm from the S.E. corner of tract no. 27, as shown on the plat of said farm, extending eastward and northward to where the same intersects with State Highway no. 63, at Lot no. 1, shown on said plat.

2

(Emphasis added).  The private road referred to in the deed crosses a parcel of farmland known as Tract 28 and provides access to the state highway for Tracts 26 and 27.

In 1988, Myers purchased Tract 28 from Martha and Herbert Mayes.  Myers' deed also makes reference to his right, along with the other adjoining property owners, to "the unobstructed use of the private road."

When Myers and Wilson purchased their respective tracts, two gates stood across the road as it passed through Tract 28.  One of the gates was erected in 1953, the same year that Colonial Acre Farm was subdivided.  The other gate was erected in 1970, apparently as a result of an oral understanding among George Myers, then owner of Tracts 20-26; Hoyt Wilson, then owner of Tract 27; and Herbert Mayes, then owner of Tract 28.

The gates were still standing in July, 1996, when Hoyt Wilson and Danny Wilson[1] leased Tract 27 to the defendant Elmo Mayes.  Mayes testified that although he never found either gate locked, he and his employees did encounter difficulties in using the road:

> Q.   The first time you or your employees came through, how did they get through the gate?
>
> A.   I don't know how they got through it. All I know is every time they'd start through, it would be a phone call....They'll be hollering up there that Steve was on them and he didn't want them to go through the gate, particularly this one boy that was working for me at that time, Pete Goins.

---

[1]Hoyt and Danny Wilson are both identified as lessors in the lease.

Q. So you're saying Steve [Myers] prevented you all from going through the gate?

A. He tried to.

Q. He never prevented you, did he?

A. No, he never.

Sometime after Mayes leased Tract 27 from the Wilsons, Myers discovered that the gates had been cut down with a chainsaw. Myers testified that after the gates were destroyed, some of his cattle got loose and he became concerned about trespassers and the potential theft of his farm machinery. Consequently, on April 14, 1997, Myers filed this action, seeking a declaratory judgment, damages, and a permanent injunction against Danny Wilson and Elmo Mayes. Following a bench trial, the court below held as follows:

It is the holding of the Court that unobstructed use of a roadway means just that and that the placing of a gate of said roadway obstructs the use thereof. There was no problem so long as the adjoining property owners orally agreed to the contrary but during the course of the hearing, the owner, [Danny] Wilson, stated that he desired that the gate be removed.

The Court is aware that the Petitioner Steve Myers is going to have to construct cross fencing and the Court gives him 45 days from the entry [of] the order to do the same.

The request for damages and a permanent injunction from removing the gate are denied.

This appeal followed.[2]

II.

_____

[2]On the same day that the notice of appeal was filed, Myers filed a motion for suspension of relief pending appeal. The record does not indicate whether the trial court ruled upon this motion.

In this non-jury case, our review is *de novo* upon the record, with a presumption of correctness as to the trial court's factual determinations, unless the evidence preponderates otherwise. Rule 13(d), T.R.A.P.; *Wright v. City of Knoxville,* 898 S.W.2d 177, 181 (Tenn. 1995); *Union Carbide Corp. v. Huddleston,* 854 S.W.2d 87, 91 (Tenn. 1993). The trial court's conclusions of law, however, are accorded no such presumption. *Campbell v. Florida Steel Corp.,* 919 S.W.2d 26, 35 (Tenn. 1996); *Presley v. Bennett,* 860 S.W.2d 857, 859 (Tenn. 1993).

## III.

The first issue on appeal is whether Myers is entitled to maintain gates across the road when the grant of the easement expressly entitles Wilson to its "unobstructed use." Myers contends that the gates do not in any way obstruct Wilson's "use" of the road. Although he admits that the gates "without question" may be considered an obstruction on the road itself, Myers argues that the grant guarantees only the "unobstructed use of the private road," and not the "use of the unobstructed private road." Thus, the argument goes, the maintenance of the gates is not prohibited by the terms of the easement.

The general rule in Tennessee is that *absent an express provision that the way shall be open*, the owner of the servient estate may maintain gates over a right-of-way (1) if the gates are necessary for the servient estate owner's use and enjoyment of the land; and (2) if the gates do not unreasonably interfere with the right of passage. *Cole v. Dych,* 535 S.W.2d 315, 320 (Tenn. 1976); *Foshee v. Brigman,* 129 S.W.2d 207, 208 (Tenn. 1939); *De Busk v. Riley,* 289 S.W. 493, 494 (Tenn. 1926). Thus,

5

the grant of a mere right-of-way, without more, does not, in and of itself, prohibit the maintenance of gates across the easement by the servient estate. *See Foshee,* 129 S.W.2d at 208; *Long v. Garrison,* 1 Tenn.App. 211, 218 (1925).

A grant may provide for more than a "mere right-of-way", however; and in such a case, the language of the grant determines whether the owner of the servient estate may maintain gates across the right-of-way. *See Foshee,* 129 S.W.2d at 208 ("the extent of the easement is determined by the language of the grant"); *De Busk,* 289 S.W. at 494 ("Whether the grantee of a right of way is entitled to a way unobstructed by gates depends on the terms of the grant, its purposes, nature, and situation of the property, and the manner in which the way has been used, and occupied."); *see also Newsom v. Newsom,* 56 S.W. 29, 29-30 (Tenn.Ch.App. 1900) (holding gate should be removed when deed provided for "free passage and use of all roads").

Thus, the question in the instant case becomes: Does the grant to Wilson of "the right of the unobstructed use of the private road" prohibit the maintenance of gates across that road? The answer depends on what the phrase "unobstructed use" means. We are not aware of any cases in Tennessee construing the meaning of the phrase "unobstructed use" or similar language in a grant of an easement. However, other jurisdictions have addressed this issue. For example, in *Missionary Soc. of Salesian Congregation v. Evrotas*, the Court of Appeals of New York held that the owner of the servient estate was not entitled to maintain a gate where the grant gave the owner of the dominant estate "free and unobstructed use" of the right-of-way. 175 N.E. 523, 524 (N.Y. 1931). The Court noted that a grant of "free and unobstructed

6

use" was "unusually broad" in that "it confers far more extensive rights than [a grant of] mere ingress and egress." *Id.* The Court further opined:

> [t]he erection of a gate, even if kept unlocked, to some extent interferes with and obstructs defendant's right of passage, and is inconsistent with the grant....The only kind of gate which can fail to interfere with defendant's right is one which not only remains unlocked but which is perpetually kept open. Such a gate is useless for any purpose.

*Id.* at 524.

Another case is *Kerr v. Jennings,* 886 S.W.2d 117 (Mo.Ct.App. 1994), in which the grant of the easement provided that none of the owners entitled to use the easement could "block, obstruct, hinder or interfere with the easement area or the permitted traffic thereon." *Id*. at 127. The Missouri Court of Appeals held that gates could not be maintained across the easement, finding as follows:

> [i]n the context of the easement, the terms "block," "obstruct," "hinder" and "interfere" have plain and common meanings which are not ambiguous and do not require judicial construction. The definitions of these terms include the complete stoppage of progress on a roadway, as well as the slowing or impeding of progress of traffic on a roadway. Gates slow or impede the progress of traffic on a roadway.

*Id.* at 127-28 (footnote omitted).

We find the rationale of these two cases persuasive. The grant to Wilson of the "unobstructed use of the private road" confers more than a mere right of ingress and egress to the

7

property; it confers the right to use the road *without obstructions*. The plain and common meaning of "obstruction" is a "hindrance, obstacle, or barrier." *Black's Law Dictionary* 1078 (6th ed. 1990). The term "obstruct" is defined as "[t]o hinder or prevent from progress, check, stop, also to retard the progress of, make accomplishment of difficult and slow." *Id.* at 1077. We find that the term "unobstructed," as used in the grant of the easement, confers upon Wilson a right to use the road without hindrance, impediment, or delay -- that is, without gates. Accordingly, we hold that the trial court correctly found that Myers was prohibited by the language of the grant from maintaining gates across the road.

IV.

Myers next argues that, even if the proper construction of the phrase "unobstructed use" means that he is prohibited from maintaining gates, the defendants have abandoned or surrendered their right to a road free of gates. Myers argues in his brief as follows:

> In the case at hand, [Myers] does not argue that [Wilson and Mayes] have completely abandoned their right to the use of the easement. If the Defendants did have a right to use of the private roadway in question without any gates being maintained on that roadway, it is clear that the Defendants and the predecessors in interest of the Defendants have abandoned that right.
>
> * * *
>
> One of the gates across the right of way existed for forty three years and the other gate existed for twenty six years without any objection by either the Defendants or their predecessors in interest. This acquiescence is clear evidence of an intent to abandon.

8

We addressed a similar argument in *Edminston Corp. v. Carpenter,* 540 S.W.2d 260 (Tenn.Ct.App. 1976). In that case, the owner of the servient estate argued that the owner of the dominant estate had partially abandoned the 30-foot easement because the road maintained upon the easement was only 15 feet wide. *Id.* at 262. We rejected the servient estate owner's contention that the non-use of the entire width of the right-of-way constituted a partial abandonment:

> Mere nonuser, however long continued, affords no sufficient evidence of abandonment of an easement created by express grant. The abandonment of an easement like the abandonment of any property right, must be accompanied by the requisite intent to abandon. The proof totally fails to establish an abandonment of the thirty-foot easement. To the contrary, the easement has been continuously used for the purposes for which it was created in 1916. For the past 10 to 15 years, the county has graded, graveled and maintained a road about 15 feet wide on the easement. It is not necessary that the entire thirty-foot width be actual roadbed.

*Id.* (citations and internal quotation marks omitted).

In the instant case, we do not find that Wilson partially abandoned the right-of-way. When he purchased Tract 27, the deed expressly provided the "right of the unobstructed use of the private road." At that time, the two gates were being maintained across the road, apparently as a result of an unwritten agreement twenty years earlier among the previous landowners. Wilson's failure to immediately object to Myers' maintenance of the gates does not render the express grant of "unobstructed use" void. The fact that the gates were, at least for a time, permissively maintained, is not evidence that Wilson intended to abandon the easement as granted to him in the deed.

9

*See, e.g., **Cottrell v. Daniel,*** 205 S.W.2d 973, 976 (Tenn.Ct.App. 1947)(holding construction of fences across easement was temporary and permissive and thus did not constitute abandonment of easement).  It is clear that Wilson no longer consents to the gates being maintained, and we find and hold that he is entitled, by the express language of the grant, to have these obstructions removed.

V.

The judgment of the trial court is affirmed.  This case is remanded for such further proceedings, if any, as may be required, consistent with this opinion and for collection of costs assessed below, all pursuant to applicable law.  Costs on appeal are taxed to the appellant, Steve Myers.

_____
Charles D. Susano, Jr., J.

CONCUR:


_____
Houston M. Goddard, P.J.


_____
D. Michael Swiney, J.