W. H. TOWATER et al. v. W. F. DARBY et al.

Western Section.    March 5, 1932.

Petition for Certiorari denied by Supreme Court, July 4, 1932.

54

·John F. Hall, of Jackson, for appellant.

Hu C. Anderson and D. T. Henderson, both of Jackson, for appellee.

SENTER, J. The complainants are landowners in the Twelfth Civil District of Madison County, Tennessee, as are also the defendants. They filed the original bill in this cause alleging that for many years there was a roadway running across the lands of defendant Tomlinson, connecting what is· referred to in the record as the old Lebanon road and the Jackson-Clarksburg road, and in which the complainants have acquired an easement; that said road was closed by Tomlinson several years ago, after he purchased the farm on which he now resides and across which said road extended. The bill further alleges that after said road was closed by Tomlinson, that complainant Eubanks procured the right to open another road from a point on the old Lebanon road running west across Eubanks' land and south along Eubanks' land to the Darby or McDaniel land, and then by special agreement with Darby and McDaniel across the east end of the Darby-McDaniel land to a road or lane referred to as the Friendship lane, which lane also connected the old Lebanon road and the Jackson-Clarksburg road, and that after acquiring the right to build the road at said place, which right was acquired from Darby, who owned the life estate, and by consent of McDaniel who owned the remainder subject to the life estate of Darby, he built a wire fence on the west side of the road which he opened, which fence was built by him on the Darby-McDaniel land as a part of the agreement and consideration for the right to build said road, which formed a lane between the lands of complainant Tomlinson and the lands of Darby-McDaniel. The bill alleged that no part of this new road was built on the lands of Tomlinson, who owned the land on the east of the Darby-McDaniel tract. The bill further alleged that no part of the new road at any point was on the lands of Tomlinson, but that by collusion with McDaniel, who subsequently acquired the life estate of Darby in the Darby-McDaniel tract, making him the owner in fee of the ·McDaniel tract, that Tomlinson erected a fence which took in a part of the new roadway and McDaniel closed the roadway at both the north and south ends where the same entered upon his land, and that this was done in violation of the rights of Eubanks and others who had acquired a right with Eubanks to the free and uninterrupted use of said roadway. The bill also alleged

that the old Lebanon road which passed immediately in front of Eubanks' land and which afforded a road of ingress and egress to Eubanks' land and residence and to the other complainants, had been abandoned from Eubanks' house south to where the same intersected with the Spring Creek and Jackson road, and that Eubanks did not therefore have a convenient and accessible way from his residence to the Spring Creek-Jackson road and to the Jackson-Clarksburg road, and that if he was not entitled to have an easement in the old road across the Tomlinson land decreed to him, and if he was not entitled to have the road which he built along the east side of the Darby-McDaniel tract kept open as a means of ingress and egress to his residence, that he was entitled in this proceeding under Chapter 75 of the Acts of 1921 to have a roadway condemned across the lands of Tomlinson from his residence to the Jackson and Clarksburg road. He prayed for writs of injunction to restrain the defendants from obstructing or interfering with him in the use of said new road which he had constructed and to have the same to remain open for the use of himself and the other complainants and the public.

All the defendants answered the bill. Tomlinson by his answer denied that complainant Eubanks or the public had acquired any rights to the road which he had closed and which formerly connected the Clarksburg road with the Lebanon road; and by his answer alleged that said road was never a public road but was a farm road which ran across his land, and which had been opened by Dr. Lanier, the former owner of both the Tomlinson tract and the Eubanks tract, and opened for the convenience of his own farm and as a farm road, and that any use by others of said road was not adverse but was permissive only and that said road was closed by gates at each end. The defendant Tomlinson also denied that he had wrongfully or improperly erected his fence at a point along the west side of his land so as to place the same on the lands of McDaniel, but alleged that before building said fence he had his lands surveyed and processioned after giving notice to the adjoining landowners and that he built his fence on his own line and land. The defendant McDaniel, by his answer, denied he had ever entered into any agreement with Eubanks by which Eubanks was to acquire an easement or any rights in the strip of land on which he built the new road, and denied that Eubanks or the other complainants had acquired any easement or other rights in said strip of land, and claimed the same as his own, and that he had the right to fence the same.

After his answer had been filed, and the proof had been taken and during the hearing of the cause McDaniel was permitted to

amend his answer by pleading the statute of frauds and perjuries. The proposed amendment was supported by an affidavit. The complainants objected to the amendment being allowed at that time, and the same was allowed over the objections of complainants, and this action of the court was excepted to by complainants.

Numerous depositions were taken by the respective parties, and at the final hearing of the cause the Chancellor dismissed the bill at the cost of complainants, and denied all relief sought.

From this action of the court complainants excepted and prayed an appeal to this court, which appeal has been duly perfected and errors assigned.

We deem it unnecessary to review and discuss all the evidence, but it may be summarized as follows: It appears from the record that the Jackson and Spring Creek road is intersected by a road known as the old Lebanon road which runs north or in a northerly direction from the Jackson and Spring Creek road, and passes immediately in front of the dwelling house of complainant Eubanks. Further east and separated from the old Lebanon road by the lands of Eubanks and Tomlinson and by the lands of McDaniel and Tomlinson is another public road known as the Jackson and Clarksburg road. Dr. Lanier was the former owner of the lands now owned by Tomlinson and Eubanks which extended from the Clarksburg road to the Lebanon road. While he was the owner of both tracts of land he opened a farm road across his land, which extended from the Clarksburg road to the Lebanon road. He maintained gates at both ends of this road. He sold to Eubanks the tract of land Eubanks now owns, which fronts on the old Lebanon public road. He sold to Tomlinson the land lying east of the portion sold to Eubanks, and the tract sold to Tomlinson is crossed by the Jackson and Clarksburg road. After Tomlinson acquired the land he closed the old farm road and has put the same in cultivation. He did this about four years before the suit was brought. We think it clear from the record that complainants, nor either of them, had acquired an easement in that old road, although it had existed for probably forty years. There is nothing in the record to indicate that the use of it by Eubanks or the public was in any sense adverse. It is not contended that it was ever a public road, and it is shown by a preponderance of the evidence that it was opened and used by Dr. Lanier, the former owner of both tracts, as a farm road, and gates were maintained by him at both ends, and such use as the public made of it was purely permissive.

After Tomlinson had closed that road Eubanks had a conversation with Darby, who then owned the life estate in the tract of land adjoining Eubanks' land on the south. It seems that this conversation occurred between Darby and Eubanks at Darby's home where

Eubanks was at work cleaning out the well. Mc Daniel was present. In this conversation it appears that the matter of opening the road from Eubanks' line south to the old Friendship lane which would cross the east end of the Darby-McDaniel tract was discussed. Eubanks testified that Darby proposed to let him open a roadway at said point on the condition that Eubanks would construct a wire fence making a lane between the Darby-McDaniel land and the Tomlinson land, and that shortly afterwards he went to Darby's home to buy fenceposts with which to construct the fence, McDaniel was present, and Darby then informed Eubanks that McDaniel objected to the road being built at that place, and that McDaniel proposed that if Eubanks would sign a statement or agreement that McDaniel could close the road at any time he desired that he would agree to its being built. Eubanks refused to sign such a statement, but contended he had a right to build it without any such agreement, and did build it. In order to reach the lane known as the Friendship lane which ran east and west, the new road had to extend a short distance across the Exum land. After this road had been built Tomlinson had his land surveyed and his west line located as it adjoined the Darby-McDaniel land, and proceeded to erect a new fence along his west line. A portion of this fence extended over into the new road. Tomlinson and Eubanks had formerly had some litigation about a line fence, which however did not involve the line at this particular point. Tomlinson had been successful in that litigation, and in building a new fence the line as decreed in the former suit was projected on south and located some several feet west of a hedge fence.

A great deal of proof was taken on the subject of these lines, but we are of the opinion that by a preponderance of the evidence Tomlinson built the new fence along his west line, and where he had a clear right to built it. It is not contended that there had been any agreement between Tomlinson and Eubanks with reference to the building of the new road, and even though Eubanks honestly believed that he built that portion of the new road across the east end of the McDaniel tract and no part of it on the Tomlinson tract, we think that the weight of the evidence preponderates in favor of the contention of Tomlinson that the new road as built by Eubanks at said place was partly on the lands of Tomlinson. McDaniel denies that he heard the conversation between Darby and Eubanks, although he admits that he was at Darby's house and at the well where Eubanks was at work and where Eubanks, and another witness who was present, testified the conversation occurred between Eubanks and Darby. Eubanks knew that McDaniel at that time owned the remainder interest and that Darby only owned a life estate in the Darby-McDaniel plat. Subsequently, Darby con-

veyed to McDaniel his life estate in that tract, and McDaniel proceeded to run a fence across each end of the road where the same entered and left his land.

Appellants assign as error the action of the Chancellor in permitting the defendant McDaniel to amend his answer so as to plead the statute of frauds to the alleged oral agreement between Eubanks and Darby with reference to the building of the fence. By this assignment of error it is urged that the Chancellor abused his discretion in allowing the amendment to the answer at that time, since all the facts were essentially in possession of McDaniel at the time he filed his answer and before the proof was taken in the case, and knew that Eubanks was claiming an oral agreement with Darby made in the presence of McDaniel as his basis to the right to have the new road remain open. McDaniel filed an affidavit in support of his motion to be permitted to amend his answer, and in which he stated that he did not have definite information that Eubanks was claiming under a verbal agreement with Darby, or that the alleged agreement was not in writing until the proof had been taken.

We are inclined to think that the learned Chancellor was in error in permitting the amendment, and that the same was not seasonably offered. McDaniel knew from the beginning that Eubanks was claiming the right to build the road on the condition that he erect the wire fence and build a levee and a bridge, and McDaniel refused to give his consent except on condition that Eubanks would sign an agreement by which McDaniel could remove the fence at any time he desired to do so.

The matter of allowing amendments is in the sound discretion of the Chancellor, but an amendment offered after all the proof is in and during the progress of the trial which presents a new issue, we think, should not be allowed. In the early case of Flora v. Rogers, 4 Haywood, 202, it was held that an answer ought not to be allowed to be amended so as to bring forward new issues or new defenses after all the proof had been taken. In the case of Peterson v. Turney, 2 Tenn. Ch. App., 519, at page 549, it is said:

> "While as we have stated, amendments are allowed in this State with great liberality, the rule as to allowing amendments of an answer after proof taken—and amended answer is allowed only under very special circumstances, and certainly could not be allowed where only a legal defense is set up."

In Wilson v. Wilson, 2 Lea, 17, on this subject the court said:

> "The court is always reluctant to permit a material amendment to an answer after evidence has been taken, and especially where the object of the amendment is to rely upon an unpoplar defense, such as the statute of limitations, after having experimented with the court upon the merits."

However, in the view of the case we have taken, the amendment to the answer is immaterial. If the agreement was made with Darby as claimed by Eubanks, McDaniel did not agree to it. He was the then owner of the remainder interest in this land, subject alone to the life estate of Darby. McDaniel stated his objection, and said that he would only consent to Eubanks' building the road in the event it was building at that place on the condition that Eubanks would sign a written agreement that he could close the road at will. This condition Eubanks refused to comply with. McDaniel wanted it made clear that the building of the road would operate only as a revocable permission, and not as a fixed right in Eubanks to permanently maintain a road across McDaniel's land. We think the effect of the agreement, even if McDaniel had consented, was but a revocable permission, and was not intended as a dedication of the strip of land for road purposes to Eubanks or to the public. This was not in the mind of Darby, and certainly did not have the consent of McDaniel. Eubanks had acquired no rights except the right to use subject to the right in Darby and McDaniel to invoke it at any time they desired. After a careful review of the evidence on this question, we are constrained to reach the conclusion that Eubanks did not acquire any permanent right to have the road kept open for his use and the public's use, and that McDaniel was clearly within his rights in closing the road.

Several of the assignments of error are directed to the action of the court in holding that Eubanks or the other complainants, had not acquired an easement in the old road opened by Dr. Lanier and closed by Tomlinson. Numerous authorities are cited in support of the assignments of error on this question. However, all of the authorities are to the effect that the right to use must be adversely used, and if the use is permissive only no right of easement accrues, even though it has been permissively used for forty years. For the reasons we have heretofore given, we do not think that the assignments of error directed to that question can be sustained. There is no evidence in the record that the use of the old road opened by Dr. Lanier across his farm was ever dedicated to the public, or was ever treated as a public road, but all the evidence is to the effect that it was a private road opened by Dr. Lanier intended to serve his own farm, and that while the public was permitted to use it at times, such use by the public was purely permissive. This is evidenced by the fact that Dr. Lanier erected and maintained gates at.both ends of the road.

By other assignments of error it is contended by appellants that they were entitled to the alternative relief of having a road condemned connecting the Lebanon road and the Clarksburg road under the provisions of Chapter 75 of the Acts of 1921.

We do not think this contention can be sustained under the facts of the record. Eubanks built his home on the old Lebanon road, which was and is a public road. It is claimed that this road had been abandoned from Eubanks' house south to the Jackson and Spring Creek road. The record does not show that any part of the old Lebanon road has been abandoned as a public road, or that its location has been changed. It does appear that this portion of the old Lebanon road is not well maintained and is not being worked. But it is a public road nevertheless, and if not in good condition it is susceptible of being put in good condition. It may be true, and probably is, that a new road connecting the Clarksburg road and the Lebanon road would be a decided convenience to complainants, and especially complainant Eubanks, but we do not think the record presents facts so as to bring it within the provisions of Chapter 75 of the Acts of 1921. It must appear that such a road is not only required as a matter of convenience but as a matter of necessity. In the present case Eubanks' residence was built on the Lebanon road, which was then a public road and is now a public road, and no lands intervening between his residence and this public road. In this situation we are of the opinion that there was no error in the decree of the Chancellor on this subject.

It follows that all assignments of error are overruled, and the decree of the Chancellor is accordingly affirmed.

Appellants and sureties on the appeal bond will pay the cost of this appeal.

Owen and Heiskell, JJ., concur.