# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE

## DESIGN CONCEPT CORPORATION v. RALPH PHELPS et ux.

**Interlocutory Appeal from the Circuit Court for Blount County**
**No. L-11399      W. Dale Young, Judge**

---

### No. E1999-00259-COA-R9-CV - Decided June 20, 2000

The plaintiff is the owner of a landlocked tract of land. It brought this action to condemn a right-of-way to a public road. Following a hearing, the trial court entered an order (1) directing a jury of view to consider all property adjacent to the plaintiff's property, including that of non-parties, to determine the location of an appropriate right-of-way for the plaintiff; (2) requiring the plaintiff -- in the event the property of a non-party was selected as the location of the right-of-way -- to name that owner as a party-defendant; and (3) instructing the jury of view to limit the right-of-way selected by it to a width of no more than 40 feet. The plaintiff filed this interlocutory appeal pursuant to Tenn. R. App. P. 9.

**Tenn. R. App. P. 9 Interlocutory Appeal; Judgment of the Circuit Court Affirmed as Modified; Case Remanded**

SUSANO, J., delivered the opinion of the court, in which FRANKS and SWINEY, JJ., joined.

Linda J. Hamilton Mowles, John K. King, and M. Edward Owens, Jr., Knoxville, Tennessee, for the appellant, Design Concept Corporation.

Charles C. Burks, Jr., Knoxville, Tennessee, for the appellees Ralph Phelps and wife, Jackie Lee Phelps.

## OPINION

### I. *Background*

The plaintiff, Design Concept Corporation ("Design Concept"), owns a 255-acre tract of land in Blount County. The tract is completely surrounded by the properties of others and Design Concept apparently has no easement or right-of-way to a public road. Design Concept plans to subdivide its property, and, as a prerequisite to subdivision, it must acquire a 50-foot right-of-way to a public road.

The northwest *corner* of the plaintiff's property touches the southeast *corner* of a 6.6-acre triangle of property designated in the record as tract six; this is the only contact between these two pieces of property. The plaintiff's northern boundary adjoins a residential subdivision, with relatively large lots. A road known as Bob Young Lane runs through the subdivision. To the east of the

plaintiff's property lies a tract of land separating the plaintiff's property from a road called Marble Road. To the south, the plaintiff's property is cut off from access to a public road by the lands of others. The plaintiff's property is bordered on the west by two tracts, one known as the Hopkins' tract and a 16-acre tract owned by the defendants, Ralph Phelps and wife, Jackie Lee Phelps, that lies partially in Blount County and partially in Loudon County. The Phelps were the only adjoining property owners named as defendants in this action.

The Phelps' tract lies between the plaintiff's property and a public road known as Meadow Road.[1] An old roadbed runs from the plaintiff's property through the Phelps' property and appears to end at Meadow Road. This roadbed has not been used recently, but it was used, approximately 35 years ago, by the prior owner of the plaintiff's property as a means of access to Meadow Road. The roadbed is currently overgrown with weeds and saplings, but can still be traversed by an automobile.

In filing this action, the plaintiff relied exclusively on T.C.A. § 54-14-102 *et seq*. This suit was prompted by the Phelps' refusal to allow the plaintiff access to Meadow Road by way of the existing roadbed across their property. The plaintiff was careful not to file pursuant to T.C.A. § 54-14-101 because, so it asserts, it did not want to subject itself to the right-of-way width limitations contained in that statute.

At the hearing below, a civil engineer, specializing in subdivisions and testifying for the plaintiff, stated that the existing roadbed is the most ideal location for a route across the defendants' property. He also opined that placing a right-of-way along the defendants' property line -- as suggested by the defendants -- would not be practical and that, in fact, locating an improved roadway across the existing roadbed would increase the development value of the defendants' property. Mr. Phelps disagreed, testifying that locating the right-of-way across the existing roadbed would decrease the value of his land. More specifically, he stated that locating a right-of-way across the existing roadbed would split his property in such a way as to make it much more difficult to pursue one of his intended uses, *i.e.*, the raising of cattle.[2] He opined that, if a road must go through his property, the best location would be at an edge of his tract, along a property line.

The evidence is somewhat conflicting as to the feasibility of locating a right-of-way across the properties of some of the other adjoining landowners. As previously indicated, the only contact between the plaintiff's property and tract six to the northwest is corner-to-corner. With respect to access to Marble Road to the east, an expert witness testified that such access would cost much more than accessing Meadow Road over the defendants' property. The evidence indicates that access to Bob Young Lane to the north would not be feasible because the land lying between the plaintiff's property and Bob Young Lane is a residential subdivision. At the time of the hearing, a large tract

---

[1]The portion of Meadow Road pertinent to this case is located in Loudon County.

[2]Mr. Phelps also testified that the subdivision of his property was another option he had under consideration.

to the southeast of the plaintiff's property was under development; however, the record is not clear as to whether access to a public road via a right-of-way across this tract is feasible.

The Phelps placed a great deal of emphasis on the Hopkins' tract located to the south of their property and to the southwest of the plaintiff's property. A "loop road" connects to Meadow Road and proceeds up a hill towards the plaintiff's property. A portion of this "loop road" lies close to, but does not touch, the plaintiff's property. The terrain between this portion of the "loop road" and the plaintiff's property is fairly level. The "loop road" then curves around, proceeds back down the hill, and connects again with Meadow Road. The current condition of this "loop road" is such that an automobile can be driven over it. A portion of this road is approximately 20-25 feet from a boundary line of the Hopkins' tract. It appears from the maps in the record that the distance between the plaintiff's property and Meadow Road along the "loop road" is about twice that of the distance along the existing roadbed across the defendants' property.

The trial court, after an evidentiary hearing, found and held as follows:

> (1) The Court will impanel a Jury of View and, among other things, direct the jury to go upon Plaintiff's land for the purpose of making a determination as to the location of a right-of-way for Plaintiff's use and benefit for ingress and egress to a public road or highway. The jury will be directed to consider all adjacent landowners' land in making the determination.
>
> In the event the Jury of View selects a right-of-way over and upon land other than the Defendants', then, and in any such event, Plaintiffs will be required to join that landowner as party defendant to this action.
>
> (2) After the Jury of View has selected the land upon which said right-of-way is to be located, the Court will instruct the Jury of View, among other things, to set-aside and locate a right-of-way for ingress and egress purposes not to exceed twenty-five (25) feet in width and to establish an additional fifteen (15) foot right-of-way for utilities, if, in the opinion of the Jury of View, the same is appropriate.

We granted Design Concept's application for an interlocutory appeal pursuant to Tenn. R. App. P. 9. Design Concept argues that the trial court erred (1) when it directed the jury of view to "consider all adjacent landowners' land" rather than just the Phelps' property; and (2) when it limited the right-of-way to a width of no more than 40 feet.

## II. *Standard of Review*

In this case, our review is *de novo* upon the record, with a presumption of correctness as to the trial court's factual determinations, unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d); ***Wright v. City of Knoxville***, 898 S.W.2d 177, 181 (Tenn. 1995); ***Union Carbide Corp. v. Huddleston***, 854 S.W.2d 87, 91 (Tenn. 1993). The trial court's conclusions of law are reviewed *de novo* with no presumption of correctness. ***Campbell v. Florida Steel Corp.***, 919 S.W.2d 26, 35 (Tenn. 1996); ***Presley v. Bennett***, 860 S.W.2d 857, 859 (Tenn. 1993).

## III. *Analysis*

### A. Scope of Inquest

The plaintiff first argues that T.C.A. § 54-14-102 *et seq*. does not require a plaintiff to name all adjoining property owners as defendants but rather allows a plaintiff to pick and choose among the adjoining owners. The plaintiff asserts that requiring joinder of all surrounding property owners would make cases brought under the pertinent statutory scheme much more lengthy, expensive, and complicated. It contends that this is especially true in this case where, so the argument goes, the proposed easement over the existing roadbed across the defendants' property is clearly the best choice for the right-of-way. In contrast, the defendants argue that there are other, more appropriate alternatives across other adjoining properties that would not cause as much injury to the servient estate as would the plaintiff's proposed right-of-way over their property, and thus, the trial court did not err in directing the jury of view to examine these other alternatives.

T.C.A. § 54-14-102 (1998) provides, in pertinent part, as follows:

> (a) Any person owning any lands, ingress or egress to and from which is cut off or obstructed entirely from a public road or highway by the intervening lands of another, or who has no adequate and convenient outlet from such lands to a public road in the state, by reason of the intervening lands of another, is given the right to have an easement or right-of-way condemned and set aside for the benefit of such lands over and across such intervening lands or property.

T.C.A. § 54-14-103 (Supp. 1999) provides, in pertinent part, as follows:

> (a) Such person or persons desiring to secure such easement or right-of-way may file their petition in the county where any of the lands affected by the proceedings lie:
>
> (1) Making all parties owning or interested in any or interested in any way in the lands, or property to be affected by the easement or right-of-way parties defendant thereto;

(2) Setting out the portions of land or property desired for the easement or right-of-way and the amount, extent, and location of same desired;

\* \* \*

(4) Setting out the object for which such easement or right-of-way is wanted....

\* \* \*

(d) Bond shall be given for costs....

T.C.A. § 54-14-111 (1998) provides, in pertinent part, as follows:

> The jury shall be authorized to locate the easement or right-of-way at the place set out in the petition or at any other place, care being taken to locate same where it will be of service to the petitioners and occasion as little damage as practicable to the defendants.

The plaintiff asserts that it has satisfied the statutory prerequisites for relief found in T.C.A. § 54-14-102(a) and that its petition for relief complies with the requirements found in T.C.A. § 54-14-103. It further contends that nothing in the statutory scheme requires a plaintiff to name all adjoining landowners as party defendants and that, because a plaintiff is allowed to choose the location of the easement and thus the defendant, the trial court erred when it instructed the jury of view to consider all of the adjoining properties.

The statutes in question do not address the question with clarity. Furthermore, we find little guidance in the case law. In ***Boone v. Frazor***, C/A No. 87-177-II, 1988 WL 77542 (Tenn. Ct. App. M.S., filed July 27, 1988), the defendants, by way of counterclaim, sought to condemn a right-of-way across the plaintiff's property pursuant to T.C.A. § 54-14-102. ***Id***. at \*5. We affirmed the trial court's dismissal of the counterclaim because the counterclaim did not satisfy the requirements of T.C.A. § 54-14-103 in that it did not contain an adequate description of the property sought for the right-of-way and was not accompanied by a bond for costs. ***Id***. After so holding, we then made the following statement:

> The [counter-plaintiffs] would have been required to join only the [counter-defendants] as parties if [the counter-defendants' property] were the only property potentially affected by their request for a right-of-way to [a public road]. However, [the proposed right-of-way] is only one of three routes that the [counter-plaintiffs] and others have used to gain access to the [counter-plaintiffs'] property. They have also used a route across the Roberts property as well as a more circuitous route farther to the west across the Patton property.

The [counter-plaintiffs] would not be entitled to [their proposed right-of-way] if they have another means of access to [the public road]. The existence of other routes and the possibility that the [counter-plaintiffs] might have acquired prescriptive easements for these routes required the [counter-plaintiffs] to name the owners of the property where the other routes were located as parties.

There is no proof that any of the other property owners have denied the [counter-plaintiffs] permission to use the other routes. There is likewise no proof that [the proposed right-of-way] is the most financially expedient and least disruptive access available to the [counter-plaintiffs]. These issues should have been presented and resolved as a part of the...counterclaim. Since they were not, the trial court properly found that the issue was not before the court.

*Id*., at *5-*6.

The counterclaim in ***Boone*** was dismissed for failure to comply with the requirements of T.C.A. § 54-14-103. For this reason, the above-quoted language appears to be dicta. This being the case, we are mindful of the principle that "a case is authority for the point decided, and nothing more, and...general expressions in an opinion are to be limited to the case with which the court was dealing." ***Vinson v. Nashville, Chattanooga & St. Louis Ry.***, 321 S.W.2d 841, 845 (Tenn. Ct. App. 1958). In any event, we still find the principles articulated in the ***Boone*** case to be reasonable and persuasive as applied to the facts of the instant case. Accordingly, we hold that the relevant statutes, as illuminated by the language in ***Boone***, justify the following principles: (1) if the named defendant's property is the only property potentially affected by a plaintiff's desire for a right-of-way to a public road, the plaintiff need not name other adjoining landowners as party defendants, and the jury of view's inquest is limited to the named defendant's property; (2) if a plaintiff already has an existing right-of-way, by way of prescriptive easement, across the land of an adjoining property owner not named as a defendant, the plaintiff must name that landowner as a party defendant so that the court may determine whether the plaintiff is eligible for relief under T.C.A. § 54-14-101 *et seq*.; (3) if the plaintiff has an existing right-of-way, by way of consent of an adjoining landowner, the plaintiff is not entitled to condemnation of a right-of-way over the land of the named defendant under the statutory scheme; and, finally, (4) if a plaintiff does not have an existing right-of-way but there are other potentially feasible rights-of-way across the lands of adjoining landowners not named as party defendants, the court shall instruct the jury of view to examine -- in addition to the property of the original defendant -- the property of these adjoining landowners to determine the most adequate and convenient, *i.e.*, the most financially expedient and least disruptive, access available to the plaintiff.

Applying the above principles to the instant case, we cannot say that the evidence shows that the defendant's property is the only property potentially affected by the plaintiff's desire for a right-of-way to a public road. While there is no proof that the plaintiff has an existing right-of-way, by way of prescriptive easement or consent, the evidence does show that there are other potentially feasible

-6-

rights-of-way across the lands of adjoining landowners not named as party defendants. Thus, we are of the opinion that the trial court did not err in instructing the jury of view to examine the lands of adjoining property owners to determine the most adequate and convenient location for a right-of-way connecting the plaintiff's property to a public road. Accordingly, this issue is resolved adverse to the plaintiff.

Design Concept next argues that even if the statutes do not require the jury of view to limit its examination to the named defendants' property, the procedure by which the trial court ordered the jury of view to examine the properties of other adjoining landowners is unconstitutional. More specifically, it argues that the trial court's order constitutes a denial of due process owed to the non-party adjoining landowners in that it allows the jury of view to "select" property for condemnation *before* the adjoining property owners receive notice of the proceeding. We agree.

Article I, § 8 of the Tennessee Constitution prohibits the taking of private property except by the "law of the land," a phrase synonymous with "due process of law" found in the Fifth and Fourteenth Amendments of the United States Constitution. *State v. Hale*, 840 S.W.2d 307, 312 (Tenn. 1992). The most fundamental requirements of due process are notice and an opportunity to be heard. *Phillips v. State Bd. of Regents*, 863 S.W.2d 45, 50 (Tenn. 1993). The purpose of these requirements is to ensure that the affected parties are "informed that the matter is pending and can choose for [themselves] whether to appear or default, acquiesce or contest...." *Greene v. Lindsey*, 456 U.S. 444, 449, 102 S.Ct. 1874, 1877, 72 L. Ed. 2d 249 (1982).

With these principles in mind, we find that the trial court erred in directing the jury of view to examine the property of non-parties. We are troubled by a procedure authorizing a jury of view to enter upon the property of non-parties and allowing for the possibility that the jury of view will recommend condemnation of a portion of that property *before* the owner is made a party to the proceeding. Such a procedure denies those adjoining property owners notice and an opportunity to decide for themselves what action, if any, they desire to take to protect their interests. Joining them as parties *after* the inquest comes too late, as the jury of view's decision already will have been made. Therefore, we hold that the trial court must order the potentially-affected adjoining landowners to be named as party-defendants prior to the jury of view's examination of their property.

Upon remand, the trial court is directed to modify its order to require the plaintiff to join as party defendants those adjoining owners of property over which a right-of-way for the benefit of the plaintiff is potentially feasible. However, we hold that the evidence preponderates in favor of a finding that a right-of-way through tract six and one through the residential subdivision to the north of the plaintiff's property are not feasible. Accordingly, these property owners are not to be joined as party defendants. Once the new parties are joined, this matter will proceed pursuant to the statutory scheme.

## B. Width Limitations

Design Concept next argues that the trial court erroneously applied the width limitations found in T.C.A. § 54-14-101 to a petition for a right-of-way that was expressly brought pursuant to T.C.A. § 54-14-102. Along these lines, it first argues that T.C.A. § 54-14-101 only applies to actions brought in general sessions court,[3] not to actions where, as here, the plaintiff brings suit in circuit court. It next emphasizes the language in T.C.A. § 54-14-108 providing that the jury of view is to set apart "a sufficient quantity of the land or property *for the purposes intended.*" T.C.A. § 54-14-108 (1998) (emphasis added). The argument concludes that, in reading T.C.A. §§ 54-14-102 and -108, the jury of view may set apart a 50-foot wide right-of-way because the plaintiff intends to subdivide its property and anything less than a 50-foot wide right-of-way is insufficient for the plaintiff's "purpose[] intended." The defendants, on the other hand, argue that the sections of Chapter 14 must be read *in pari materia*, and that the more specific width limitations in T.C.A. § 54-14-101 prevail over the more general language of T.C.A. § 54-14-108. We agree with the defendants.

T.C.A. § 54-14-101(a) (1998) provides, in pertinent part, as follows:

> (1) When the lands of any person are surrounded or enclosed by the lands of any other person or persons who refuse to allow to such person a private road to pass to or from such person's lands, it is the duty of the county court, on petition of any person whose land is so surrounded, to appoint a jury of view, who shall, on oath, view the premises, and lay off and mark a road through the land of such person or persons refusing, as aforementioned, in such manner as to do the least possible injury to such persons, and report the same to the next session of the court, which court shall have power to grant an order to the petitioner to open such road, *not exceeding twenty-five feet (25') wide*, and keep the same in repair. If any person thereafter shuts up or obstructs the road, such person shall be liable for all the penalties to which any person is liable, by law, for obstructing public roads. The damage adjudged by the jury shall, in all cases, be paid by the person applying for such order, together with the costs of summoning and impaneling the jury. Gates may be erected on the roads. In counties with a metropolitan form of government, the maximum permissible width for a road under this section shall not exceed fifteen feet (15').

> (2) If the person petitioning for a private road needs additional land for the purpose of extending utility lines, including, but not limited to, electric, natural gas, water, sewage, telephone, or cable television, to the enclosed land, such person shall so request in the petition. Upon receipt of a petition requesting additional land for the extension of utility lines, the court may grant such petitioner's request and direct the jury of view to lay off and mark a road

---

[3]Plaintiff cites no authority for his "general sessions court" argument nor have we found any.

that is *fifteen feet (15') wider than is permitted by the provisions of subdivision (a)(1).*

* * *

(c) As used in this chapter, "county court" or "court" is deemed a reference to the entity in each county which has succeeded to the judicial functions of the former county court after 1978.

(Emphasis added).

T.C.A. § 54-14-102 (1998) provides, in pertinent part, as follows:

(a) Any person owning any lands, ingress or egress to and from which is cut off or obstructed entirely from a public road or highway by the intervening lands of another, or who has no adequate and convenient outlet from such lands to a public road in the state, by reason of the intervening lands of another, is given the right to have an easement or right-of-way condemned and set aside for the benefit of such lands over and across such intervening lands or property.

(b) The chancery and circuit courts and county courts, the latter acting by and through the county executive, are given concurrent jurisdiction in such matters.

T.C.A. § 54-14-108 (1998) provides that

[t]he jury will then proceed to examine the ground and may hear testimony, but no argument of counsel, and set apart by metes and bounds a sufficient quantity of the land or property for the purposes intended, and assess the damages occasioned to the parties interested or affected thereby.

In construing statutes, we are to "adopt a reasonable construction which avoids statutory conflict and provides for harmonious operation of the laws." *Carver v. Citizen Utilities Co.*, 954 S.W.2d 34, 35 (Tenn. 1997). Statutes that relate to the same subject matter are to be construed *in pari materia* so as to promote their common purpose, *id.*, and statutes addressing the matter specifically take priority over those addressing the matter generally. *Drennon v. General Elec. Co.*, 897 S.W.2d 243, 247 (Tenn. 1994). Statutes that are in derogation of the rights of property owners, such as the ones at issue here, are to be strictly construed against the condemner and liberally in favor of the property owner. *Draper v. Webb*, 418 S.W.2d 775, 776 (Tenn. Ct. App. 1967); *Vinson v. Nashville, Chattanooga & St. Louis Ry.*, 321 S.W.2d 841, 844 (Tenn. Ct. App. 1958).

Design Concept argues that a plaintiff without adequate or convenient access to its property is entitled to a right-of-way sufficient for the purposes sought and cannot be confined to a lesser right-

of-way that would be sufficient for other purposes. In support of this decision, it relies on *DeBusk v. Riley*, 289 S.W. 493 (Tenn. 1926) and *Lay v. Pi Beta Phi, Inc.*, 207 S.W.2d 4 (Tenn. Ct. App. 1947).

In *DeBusk*, the defendants filed a counterclaim pursuant to a prior version[4] of what is currently T.C.A. § 54-14-102. *DeBusk*, 289 S.W. at 494. They sought to widen their existing 12-foot right-of-way to 15 feet. *Id*. The existing right-of-way was adequate for farming purposes, but it was inadequate and inconvenient as a means of traveling by vehicle to and from the public road. *Id*. at 495. The Supreme Court held that the right-of-way should be widened. *Id*.

We are of the opinion that *DeBusk* merely stands for the proposition that the statutory scheme at issue allows for the widening of an existing right-of-way according to the purpose for which the widening is sought. It does not answer the question, however, of whether a right-of-way may be widened beyond the width limitations in T.C.A. § 54-14-101 because the new width of the right-of-way in *DeBusk* was only 15 feet, a width not prohibited by the version of T.C.A. § 54-14-101 in effect at the time.[5]

The plaintiff also relies on *Lay* to support its argument that the width restrictions in T.C.A. § 54-14-101 do not apply to actions brought under T.C.A. § 54-14-102. In *Lay*, the petitioners sought to condemn a 36-foot right-of-way across the defendant's property pursuant to what is currently § 102.[6] *Lay*, 207 S.W.2d at 5. The defendant asserted that the petitioners had other means of access to their property. *Id*. We held that the petitioners were entitled to the condemnation, saying "[t]he proof is not entirely satisfactory as to whether [petitioners], as a matter of fact, have an easement over [someone else's] property but we think it is entirely clear that such right if it exists is not adequate and if [petitioners] should be forced to use that means of ingress and egress their business would be severely handicapped and their property depreciated in value to the extent of $10,000." *Id*. at 6.

We do not believe that *Lay* supports the plaintiff's position. In *Lay*, the issue was whether the petitioners had an adequate and convenient outlet to a public road. The width of the easement was not at issue. Though the easement granted was in excess of the width limitations of the immediately-preceding statute,[7] we do not believe that the case constitutes authority for the proposition that T.C.A. § 54-14-102 is not subject to the width limitations of T.C.A. § 54-14-101.

In our judgment, *Lay* and *DeBusk* are not precedent for the position espoused by the plaintiff. Moreover, we have found no other cases dealing precisely with the question of whether the width

---

[4]*See* Acts of 1921, ch. 75, § 1.

[5]*See* Acts of 1868-1869, ch. 14, §1.

[6]*See* Code 1932, § 2746.

[7] *See* Code 1932, § 2745 (providing that the right-of-way cannot exceed 15 feet).

limitations in T.C.A. § 54-14-101 apply to actions brought specifically under T.C.A. § 54-14-102.[8] We are left to determine the issue as a question of first impression. Reading the statutes *in pari materia* and construing them liberally in favor of the defendants, we conclude that the width limitations of T.C.A. § 54-14-101 apply to the facts of the instant case.

There is no doubt that T.C.A. § 54-14-101 and T.C.A. § 54-14-102 both relate to condemnation of private easements or rights-of-way for the benefit of a property owner lacking a sufficient outlet to a public road. Reading T.C.A. § 54-14-102 together with T.C.A. § 54-14-108, a property owner who is landlocked or who is without an adequate and convenient outlet to a public road is entitled to have a jury of view set apart "a sufficient quantity of the land or property for the purposes intended." T.C.A. §§ 54-14-102, 54-14-108 (1998). As can be seen, the amount of property to which such a plaintiff is entitled is defined only generally. T.C.A. § 54-14-101 entitles an owner of landlocked property to have a jury of view set apart a road "not exceeding twenty-five (25') wide," but allows an additional 15 feet for utilities if needed and requested. This section defines the relief to which a plaintiff is entitled more specifically, and therefore, it must take priority over the more general language of T.C.A. § 54-14-108. Accordingly, we find and hold that the trial court did not err in limiting the right-of-way the jury of view could select to no more than 40 feet in width.

IV. *Conclusion*

Upon remand, the trial court shall enter an order requiring the plaintiff to join all adjoining property owners except the owners of the aforesaid tract six and the subdivision lots located to the north of the plaintiff's property. The evidence in the record reflects that a right-of-way across these properties is not feasible. Once all necessary parties are before the court and issue has been joined, the court will conduct another hearing to allow the defendants, old and new, to address those issues. All of this should occur before the jury of view's inquest. Except as altered by this opinion, the trial court's judgment is affirmed. The case is remanded for entry of an appropriate order and for further

---

[8]In saying that no Tennessee cases have specifically addressed this issue, we are mindful of **Huddleston v. Hoy**, C/A No. 01A01-9006-CH-00201, 1990 WL 186347 (Tenn. Ct. App. M.S., filed November 30, 1990). In that case, after quoting T.C.A. § 54-14-102, we stated that T.C.A. § 54-14-101(a) "provides that the easement or right-of-way may not exceed 'twenty-five (25') feet' in width." *Id*. at \*2. The case did not, however, turn on the question of whether § 101(a) restricted the proposed easement to 25 feet. Rather, the case concerned whether the proof supported the trial court's grant of a 25-foot easement to the petitioner or whether the easement should be more narrow. *See id*. Though we stated as a rule that § 101 had the effect of limiting an easement granted under § 102, such a rule played no part in the case because the easement granted to the plaintiff was going to be within the width limitations regardless of the outcome of the case. In addition, the petitioner in **Huddleston** brought suit "pursuant to Tenn. Code Ann. § 54-14-101 *et seq*., and specifically Tenn. Code Ann. § 54-14-102(a)...." *Id*. at \*1. Thus, it is factually, though somewhat subtly, dissimilar to the present case in which the plaintiff was careful to file suit exclusively under § 102 *et seq.*

proceedings consistent with this opinion.  Costs on appeal are taxed equally to the appellant and the appellees.