W. R. DEBUSK *et al. v.* M. W. RILEY *et al.*[*]

(*Knoxville.* September Term, 1926.)

Opinion filed October 16, 1926.

1. **Roads. Easement. Right-of-Way. Widening. Acts 1921, chapter 75.**

Grantee of right of way across the land of another which is adequate for farm purposes, but not as "adequate and convenient" as a wider way would be, may, under Acts 1921, by condemnation, have such way widened and gates, if any, removed, allowing adequate compensation to owner of servient estate. (Post, p. 387.)

Acts cited: Acts 1921, ch. 75.

2. **Constitutional law. Condemnation. Private right-of-way.**

The Acts of 1925, chapter 75, is a valid enactment, and covers every situation where a party is without an "adequate and convenient" outlet to a public road; and is a legal remedy intended to meet changed conditions owing to increased travel, where widening is proper. (Post, p. 388.)

3. **SAME. Same. Same. Gates across. Removal.**

Where gates are across a way when established, and grantee at the time asserted a right to remove, and it is shown such was the intention of parties, he would prevail; but in absence of an express agreement about the matter, and after an acquiesce for

---

[*]On right of owner of right of way to fence easement, see 9 R. C. L., 797. As to right to maintain gates or bars across right-of-way, see annotation in 48 L. R. A. (N. S.), 87 et seq., 9 R. C. L., 800; 2 R. C. L. Supp., 878; 4 R. C. L. Supp., 627.

many years, his conduct and delay precludes a consideration. (Post, p. 385.)

*Headnotes 1. Easements, 19 C. J., section 240; 2. Easements, 19 C. J., section 240; 3. Private Roads, 32 Cyc., p. 385; 4. Private Roads, 32 Cyc., p. 384.

## FROM UNION.

Appeal from Chancery Court of Union County.—HON. E. R. TAYLOR, Chancellor.

THURMAN AILOR, CORAM ACUFF and CHAS. S. KITTS, for plaintiff appellee.

W. P. MONROE and BOWEN & BOWEN, for defendant appellant.

MR. JUSTICE McKINNEY delivered the opinion of the Court.

The bill in this cause was filed for the purpose of enjoining the defendants from constructing a fence on each side of a private road leading from the defendants' land through the farm of complainants to a public road; and, further, to enjoin them from removing three gates maintained by complainants across said road.

The defendants, in their answer, asserted their right to use said road, to fence same and to remove said gates.

The defendants also filed their answer as a cross-bill, by which they sought to have said roadway widened to fifteen feet and said gates removed so as to provide them

an adequate and convenient road as provided for by chapter 75 of the Acts of 1921.

The chancellor found that the defendants were entitled to the use of said twelve foot roadway; in fact, there is no controversy as to this, but held that defendants were not entitled to construct said fences and remove the gates. He thereupon sustained the bill and enjoined the defendants from constructing the fences and removing the gates.

The uncontroverted proof shows that defendants own a farm worth $11,000, and that the only outlet which they have to a public road is over the twelve-foot roadway, which runs through complainants' farm, a distance of about one-half a mile.

In 1905, Ambrose Southerland, who owned both tracts, conveyed the tract now owned by defendants to J. C. Braden, by warranty deed, which contains the following provision:

"I further agree for J. C. Braden his heirs and assigns to have a road through my other land twelve feet wide where the road now is from the above described land to Knoxville and Tazewell road. I further agree to keep one-half of said road and said J. C. Braden agrees to keep up the other half."

This was the only agreement with respect to said road.

At the time of said conveyance there were three or more gates across said road, which have been maintained ever since. Complainants have succeeded to the title of Ambrose Southerland and defendants to the title of J. C. Braden.

The defendants began the erection of fences along said road, whereupon the original bill in this cause was filed on March the 28th, 1924.

In 19 Corpus Juris, beginning on page 986, it is said:

"The owner of the servient estate may erect fences along the sides of the way, but not across the way so as to obstruct it entirely. Whether the grantee of a right of way is entitled to a way unobstructed by gates depends on the terms of the grant, its purposes, nature, and situation of the property, and the manner in which the way has been used, and occupied. The grant of a way without any reservation of a right to maintain gates does not necessarily imply that the owner of the land may not do so, unless it is expressly stipulated that the way shall be an open one, or it appears from the terms of the grant or the circumstances of the case that such was the intention of the parties, and the owner of the servient estate may erect gates, or even bars across the way, provided they are so located and constructed as not unreasonably to interfere with the right of passage, and provided also they are necessary for the preservation and proper and efficient use of the lands constituting the servient estate, but not otherwise. And *a fortiori* where the grant of perpetual use of a lane on the grantor's land made no mention of an existing gate, but for ten years the grantee did not treat such gate otherwise than as a proper accessory to prevent trespassing, and the grantor never used it to obstruct the use of the grantee or others, nor claimed the right to do so, the grantee could not compel its removal by the grantor. Nevertheless in the erection of gates across a passway every precaution should be taken against interference in an unreasonable manner with the beneficial use of the passway. Furthermore where the consideration of the grant of a way and the situation and manner of use of the land indicate an

intent that the grantor should not erect additional gates across a passway granted without express reservation of right to maintain gates, he may not erect additional gates.

"The owner of the easement has no right either to build fences along the sides of a way or to erect gates across it."

The foregoing text finds ample support in the authorities, and the chancellor very properly sustained the original bill and enjoined the defendants from constructing the fences and removing the gates.

No good reason occurs to us as to why a party should be permitted to fence the land of another without his consent.

The defendants' idea was that they had a right to remove said gates since they were not provided for in the deed, especially if they fenced the roadway. But the gates were there when the Southerland deed was executed in 1905. Had the defendants, at that time, asserted a right to remove them, and shown that such was the intention of the parties, they would have prevailed. But in the absence of an express agreement about the matter, and after acquiescing in their maintenance for twenty-one years, we are of the opinion that their conduct and delay precludes a consideration of that question at this time.

With regard to the matters set up in the cross-bill the chancellor found as follows:

"Said road is on a hill part of the way, and at times becomes washed out and in bad repair. It is of width sufficient for the passage of one wagon or one automobile or other vehicle, but it is not of sufficient width for

154 Tenn.—25.

the passage of two vehicles, it is adequate for a right of way for farm purposes, and is not as convenient or desirable a way as a wider way would be for the reason it does not afford sufficient facilities and does not afford room for the passage of two vehicles.

"Defendants' farm is very valuable being shown to be worth about $11,000. It is not shown now how much travel there is on said right of way. The complainants would be damaged if said right of way was widened three feet the value of the land, and if said right of way was made an open way and the gates were removed and the right of way fenced the complainants would suffer some other damage to have certain parts of their farm cut off from water."

As we interpret the foregoing, the chancellor found that said road was adequate for farm purposes, but was inadequate and inconvenient as a means of traveling by vehicle to and from the highway. In any event, this is abundantly shown by the evidence.

It appears that said road cannot be properly maintained without ditches on both sides; that after allowing for fences and ditches there will not be sufficient land left to maintain an adequate road. Certainly it is very inconvenient to have to open and shut three gates every time a vehicle passes over this road.

A number of witnesses testified that the complainants would be benefited by said road being widened and fenced. If the road is widened and the gates removed it may be that complainants would have to fence their land and construct several gates in order to get from one part of their farm to the other part.

We are not advised as to whether Union county has an effective stock law. We are of the opinion that, for the reasons hereinabove stated, said road should be widened and said gates removed. The jury of view should allow complainants adequate compensation for the three feet of land actually taken, and for such incidental damages as they may sustain by virtue of the widening of said road and the removal of said gates, to be offset, however, by any benefits accruing to complainants, as provided for in chapter 75 of the Acts of 1921. In other words, the decree of the chancellor dismissing the cross-bill will be reversed and the cause remanded to be proceeded with according to the provisions of said act. The chancellor entertained the view that the act had no application to a cause of this character. The first section thereof is as follows:

"Be it enacted by the General Assembly of the State of Tennessee, That any person, firm or corporation owning any lands in Tennessee, ingress or egress to and from which is cut off or obstructed entirely from a public road or highway by the intervening lands of another, or who has no adequate and convenient outlet from said lands to a public road in Tennessee, by reason of the intervening lands of another, are herby given the right to have an easement or right of way condemned and set aside for the benefit of such lands over and across such intervening lands or property. The chancery, circuit and county courts of Tennessee, the latter acting by and through the chairman or county judge, are hereby given concurrent jurisdiction in such matters; and as many different owners of lands as may be so cut off or obstructed or deprived of adequate and convenient outlets may join

together against any number of different owners of intervening·lands, as may wish to have such easement or right of way so condemned and set aside to them over such intervening property and such joining·shall not make such proceedings ,multifarious or subject to be dismissed for this reason.''

It will be observed that the language used covers every situation where a party is without an adequate and convenient outlet to a public road.

We are unable to see how the agreement of the parties made twenty-one years ago, with respect to this road, could prevent one of them from pursuing a legal remedy intended to met changed, and, it might be said, modern conditions.

Since the complainants are to be compensated for their land, and for any injury suffered on account of this change, they will be made whole and will have no just cause of complaint.

This cause was transferred by the Court of Appeals to this court upon the theory that the constitutionality of chapter 75 of the Acts of 1921 was involved.

The validity of the act was upheld by this court in *Derryberry* v. *Beck et al.*, 280 S. W., 1014, but that case was decided after the order transferring the cause, hence the transfer was proper.

Each party will pay one-half of the accrued costs in this court and in the chancery court.