## LAY et al. v. PI BETA PHI, Inc.—207 S. W. (2d) 4.

Eastern Section.   July 9, 1947.

Petition for Certiorari denied by Supreme Court, December 4, 1947.

R. L. Ogle, of Sevierville, for appellants.

A. M. Paine, of Sevierville, and Homer A. Goddard, of Maryville, for appellee.

McAMIS, J.  This is a suit to condemn a right of way or easement under Code, Section 2746. By the bill complainants sought to condemn a strip of land 36 feet in width across a narrow piece of land owned by the defendant Pi Beta Phi, Inc., located between State Highway 71 and the west fork of Little Pigeon River in Gatlinburg, Sevier County, Tennessee.

The Chancellor dismissed the bill on the ground that complainants were estopped by the fact that, before filing the bill, they had executed a lease contract with defendant for the use of the same strip of land as a means of ingress and egress. The Chancellor was also of opin-

ion complainants already had an adequate and convenient outlet under the lease contract which had more than 10 years to run when the bill was filed. Complainants have appealed and assigned errors.

For the purposes of this opinion Highway 71 and Little Pigeon River will be considered as running east and west, the river paralleling the highway and running a few feet north of the northern boundary of the highway.

In 1941, complainants purchased as tenants by the entirety about one-third of an acre on the north side of the river, paying $21,000 therefor. The proof shows, without dispute, that they purchased, at the same time, a right of way over the lands they now seek to condemn. It later developed, however, that their grantor had no title to the right of way and complainants found themselves the owners of a very valuable piece of land improved as a tourist court, completely landlocked. In this sitution they entered into a lease contract with defendant on April 15, 1943 by which they were given the privilege of constructing and maintaining for a period of 13 years, at their own expense, a pier and support for a bridge, 24 feet in width from the north bank of the river to the highway. They were to pay a nominal rental of $5 per annum. The lease expressly provides that it shall not be transferred or assigned without the written consent of the lessor.

After paying rent for one year complainants filed their bill on January 2, 1945 alleging that they had no adequate and convenient outlet to the highway and that they were entitled to condemn the strip of land in question as a permanent right of way to their property. Defendant answered denying complainants' right to condemn a right of way and insisting that they already had an outlet

under their lease contract which still had 10 years to run. It was also insisted that complainants had another outlet from their property to the highway over the property of one Whaley and across a ford in the river approximately 325 feet west of their propery.

■ Code Section 2746 provides that any person owning lands entirely cut off from a public road by the intervening lands of another, or who has no adequate and convenient outlet to a public road, may condemn a right of way across such intervening lands. This language has been construed to cover every situation where a party is without an adequate and convenient outlet to a public road. Debusk v. Riley, 154 Tenn. 381, 289 S. W. 493. It does not warrant condemnation as a mere matter of convenience. Towater v. Darby, 15 Tenn. App. 53. But relief will not be withheld because the party seeking to condemn has another outlet which is not adequate and convenient (Brady v. Correll, 20 Tenn. App. 224, 97 S. W. (2d) 448) or because, at great expense, another outlet might be provided which would still be inadequate. Fite et al. v. Gassaway, 27 Tenn. App. 692, 184 S. W. (2d) 564.

■ The Chancellor made no finding as to whether complainants have an easement over the Whaley property or, if so, whether it would be adequate considering the type of business conducted by complainants. The proof is not entirely satisfactory as to whether complainants, as a matter of fact, have an easement over the Whaley property but we think it is entirely clear that such right if it exists is not adequate and if complainants should be forced to use that means of ingress and egress their business would be severely handicapped and their property depreciated in value to the extent of $10,000. It would not be practical for them to attempt to condemn

a right of way over Pleasure Island as suggested by defendant because of the necessity of building two bridges and condemning property much more valuable than the strip here sought to be condemned. It is also suggested that complainants could cross to the highway from the eastern end of their property but witnesses for the defendant admit that to do so it would be necessary for complainants to demolish two of their cabins and construct another bridge at a cost of several thousands of dollars. We conclude, therefore, that the place where the present bridge is located is the most feasible from every standpoint. In addition, it is shown that complainants have a right of way to a point near the center of the river and the bridge is already constructed at that point. For more than half the distance across defendant's property the land is covered by the waters of Little Pigeon River and, without attempting to fix the distance, it appears from the maps that only about 25 or 30 feet of dry land will be needed. We think the construction of a bridge at this point would cause as little damage to the lands of others as at any other point which could be selected, if not less.

We conclude, for the reasons stated, that complainants are entitled to condemn the right of way unless precluded by the fact that they have a present right to cross the river at this point under their lease which has 10 years or more yet to run or unless they are estopped by reason of having executed the lease.

We have not been cited to any authority sustaining defendant's position and from our own investigation of the authorities we have not been able to find any. The cases are uniformly to the contrary.

The rule is that, except where restricted by statute, a right or interest already owned by the condemnor may

be increased and the fact that the condemnor already owns some interest in the property is not a bar to his acquisition under the right of eminent domain of the fee title, or of some other additional or increased interest. 18 Am. Jur., 716; 29 C. J. S., Eminent Domain, Sec. 228; Annotation 108 A. L. R., 1522; Houston North Shore Railway Co., et al. v. Tyrrell, Trustee, et al., 128 Tex. 248, 98 S. W. (2d) 786, 108 A. L. R. 1508.

■ A number of cases may be found holding that the right to condemn is not lost by the fact that the condemnor already has possession of the property which he seeks to condemn under a lease agreement.

In New York & H. R. Co. v. Kip, 46 N. Y. 546, 7 Am. Rep. 385, the condemnor, a railroad company, held the property which it sought to condemn under a lease. The same questions were made in that case but the court held the Railroad Company had a right to condemn under the statute; that the lease did not cut off that right and that the Company was not estopped to apply to the court for condemnation.

In Russell v. Trustees of Purdue University, 93 Ind. App. 242, 178 N. E. 180, a tenant which had taken possession of property under a lease providing for a five year tenancy was held not to be estopped from acquiring the fee simple title by a condemnation proceeding.

In Central Hanover Bank & Trust Co. v. Pan American Airways, 137 Fla. 808, 188 So. 820, it was held that the right to condemn property for a seaplane base would not be denied because the condemnor occupied the property under a lease, renewable from term to term until the year 1980, and was, therefore, secure in the use of the property for more than 30 years by virtue of its lease.

Other cases discussing the general principle may be found in the Annotation at 108 A. L. R. 1522.

It is true the cases cited involved public service corporations while in this case the right to condemn is invoked by an individual. But we think the principle is the same. In both instances the right to condemn has its foundation in authority conferred by statute and the need for a permanent easement appurtenant to the land is as great in the one case as in the other. The right to use the land under an unassignable lease confers only a temporary right on the lessee. It is wholly inoperative if title to the land passes either by devolution or alienation. Permanent improvements on the land could not safely be made on the basis of such a right and we doubt that a purchaser could be found, if complainants should for some reason be forced to sell their property, who would be willing to buy without a permanent easement. We think the rights of the parties should be definitely settled in the present suit and the complainants are entitled to condemn an easement subject to defendant's rights under the lease if it elects to have the lease continue in force and have damages assessed only for the reversionary interest.

We are asked by complainants to fix the location of defendant's line in order that the jury may know how much land is to be taken. It would be difficult, if not impossible, to locate the line on the present record so that markers could be placed on the ground. This question can best be determined by the Chancellor.

The decree below will be reversed and the cause remanded for further proceedings. Costs of appeal will be taxed to defendant and costs below will abide the final result.

Hale and Burnett, JJ., concur.