# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### March 20, 2014 Session

## ROBERT WALKER AND SUSAN ELDER[1]
### v.
## CHARLES SMITH
### v.
## CLIFFORD BYRNE AND WIFE, CAROL BYRNE

**An Appeal from the Chancery Court for Marion County**
**No. 7648      Jeffrey F. Stewart, Chancellor**

---

**No. M2013-01816-COA-R3-CV - Filed July 11, 2014**

---

This appeal involves private condemnation of an easement. The plaintiffs and the defendant both owned property on an island in the Tennessee River. There was a causeway or land bridge across the river, connecting the island to the mainland. The trial court rejected the defendant's claim for private condemnation of an easement on the plaintiffs' property to enable the defendant to access the causeway. It also enjoined the defendant from using the causeway or from entering onto the plaintiffs' property to get to the causeway. The defendant appeals. We hold that the causeway is accessible by the public and so vacate the injunction. We reverse the trial court's decision on the defendant's private condemnation claim and hold that the defendant is entitled to condemnation of an appropriate easement under the facts of this case.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court is Reversed in part, Vacated in part, and Remanded**

HOLLY M. KIRBY, J., delivered the opinion of the Court, in which DAVID R. FARMER, J., and J. STEVEN STAFFORD, J., joined.

J. Harvey Cameron, Jasper, Tennessee, for the Defendant/Counter-Plaintiff/Appellant, Charles Smith

---

[1]The original action was brought by Mary Dell Blevins Smith. While the lawsuit was pending, Ms. Smith died, and her daughter, Susan Elder, was substituted as plaintiff.

Susanne Lodico and McKinley S. Lundy, Jr., Chattanooga, Tennessee, for the Plaintiffs/Counter-Defendants/Appellees Robert Walker and Susan Elder

Counter-Defendants/Appellees Clifford Byrne and Carol Byrne, appellees, *pro se* (no brief filed)[2]

**OPINION**

Once upon a time, Benton and Lillian Sexton owned two pieces of real property in Marion County, Tennessee. One of the parcels formerly owned by the Sextons is on an island in the Tennessee River, commonly called "Paradise Island." The other parcel is a smaller one on the mainland, fronting on the Tennessee River. The island lot is located directly across the river from their mainland lot, with about 400 feet of river separating the two.

Prior to 1977, there was no way to access Paradise Island by land; the only way to get to the island was by boat over the navigable waters of the Tennessee River. In 1976, Mr. Sexton applied for and was granted a permit from the U.S. Army Corps of Engineers to build a causeway — essentially a raised land bridge — from his lot on the mainland ("land lot") directly to his lot on Paradise Island ("island lot"). The permit authorized Mr. Sexton to "place approximately 1800 cubic yards of fill material" in the river to construct "an 8' x 12' x 400' causeway" lined with riprap, loose stones for the foundation for the structure. The permit made Mr. Sexton responsible for maintaining the structure and keeping it "in good condition." The permit stated: "[T]his permit does not convey any property rights, either in real estate or material, or any exclusive privileges . . . ."

The Corps of Engineers expressly reserved the right to modify, suspend, or revoke the Sextons' permit. The Sextons were allowed to transfer the permit to a third party, provided they gave written prior notice to the Corps of Engineers and obtained written approval from the Corps of Engineers. In the event of a transfer, the transferee would be required to abide by all of the terms of the permit. The permit provided: "[I]f the permittee transfers the interests authorized herein by conveyance of realty, the deed shall reference this permit and the terms and conditions specified herein and this permit shall be recorded along with the deed . . . ."

The Sextons did not construct the causeway. Instead, in July 1977, a few months after the Corps of Engineers granted the permit, the Sextons sold both lots to two couples jointly, one half to E. David and Ruth Walker and the other half to Vernon T. and Mary Dell Blevins

---

[2]Clifford Byrne filed an affidavit with this Court indicating that he adopts the arguments raised by Mr. Walker and Ms. Elder in all relevant respects.

Smith (collectively, "Purchasers"). As per the language in the permit, the Sextons attached the Corps of Engineers permit to the warranty deed, thus transferring to the Purchasers "the interests authorized" in the permit.

Soon after the purchase, the Purchasers set about constructing the causeway. The Purchasers invested considerable time, effort, and money into constructing the causeway. It required the use of large power equipment such as bulldozers, backhoes, and dump trucks, to move soil and large rocks into place in the river. The Purchasers installed culverts at the bottom of the causeway so that it would not impede the flow of the river.

The Purchasers completed construction of the causeway by the end of the summer of 1978. It spans the river and connects the Purchasers' mainland property to the island property. The top of the causeway is not paved, and is essentially a single-lane dirt road.

On the mainland, the public road closest to the causeway is nearby Mullins Cove Road. The causeway is connected to Mullins Cove Road by a one-lane paved driveway that cuts across property owned by the Purchasers and their neighbors, Clifford and Carol Byrne. To control the use of the causeway, the Purchasers erected a gate at the entrance of the causeway. So, to get to the island from Mullins Cove Road, one must turn off of Mullins Cove Road onto the paved driveway, which traverses the property of the Purchasers and the Byrnes; then, at the end of the driveway, one must open the gate and go through it to enter the causeway to get to the island.

On Paradise Island, the causeway exits onto the Purchasers' island property. It is necessary to traverse the Purchasers' island property at the end of the causeway to get to anywhere else on the island from the causeway. So, the end result is that both openings to the causeway, on the island end and on the mainland end, connect to property owned by the Purchasers.

At some point, the Purchasers subdivided part of their island property into eight or nine lots. The Purchasers sold the lots and a home was built on each lot. Most of the homes on these lots are vacation homes, occupied mainly on weekends. The deeds conveying the lots included right-of-way over the Purchasers' island property and their mainland property for ingress to and egress from the island via the causeway.[3] In sum, for over 30 years, only the Purchasers and those who purchased island lots from the Purchasers used the causeway to go to and from Paradise Island.

---

[3]The deeds required the purchasers to contribute financially to the maintenance of the causeway, but Mr. Walker testified that there was "no set amount" that the purchasers had to pay, and some of them did not contribute at all to the maintenance of the causeway. Therefore, it appears that this provision in the deeds was not strictly enforced.

Over time, the property owned by the Purchasers passed to their children, the plaintiffs in this action. Half of the property is now owned by Plaintiff/Counter-Defendant/Appellee Robert Walker and the other half is owned by Plaintiff/Counter-Defendant/Appellee Susan Elder ("Owners"). The passage of title to the property did not affect how the causeway was used or maintained.

In 2012, Defendant/Counter-Plaintiff/Appellant Charles Smith (no relation to the Purchasers named Smith) sought to purchase a lot on Paradise Island from property owner Rachel Harris. The island lot in which Mr. Smith expressed interest consists of about three acres of undeveloped forest land, fronting on the Tennessee River and bordered by private property. One border of the lot adjoins the road that sits on the Owners' property, the same road that connects the causeway to the island. Ms. Harris also owns property on the mainland adjacent to the Owners' mainland property. She did not sell her mainland property to Mr. Smith.

When Mr. Smith visited Ms. Harris's island lot for the first time, he saw that access to the causeway was blocked by a gate. Despite this, Mr. Smith contracted with Ms. Harris to buy the island property without first obtaining permission from the Owners to go on their property and access Paradise Island via the causeway. After Mr. Smith purchased Ms. Harris's island lot, he demanded that the Owners give him access to the causeway to get to his island property from the mainland. The Owners refused.

That dispute led to the instant lawsuit. On November 16, 2012, the Owners filed a complaint for declaratory judgment and injunctive relief against Mr. Smith in the Chancery Court for Marion County, Tennessee. The complaint sought injunctive relief against Mr. Smith, to enjoin him from trespassing on the Owners' property and from using the causeway. The complaint asserted: "The Causeway is privately owned [by the Owners] and does not connect to a public road." The complaint indicated that the Owners sought to limit access to the causeway "in order to prevent deterioration and damage, particularly caused by heavy equipment." The Owners asserted in the complaint that the island lot Mr. Smith contracted to purchase from Ms. Harris "has never been owned by the [Owners] or their predecessors in title" and that Ms. Harris "did not contribute to the cost of building or maintaining the Causeway and does not have any right to access the [Owners'] Land Lot or Causeway." The Owners asked the trial court to determine the legal rights of the parties, declare that Mr. Smith has no legal right to access the private property of the Owners, and enjoin Mr. Smith from accessing either their property or the causeway. The Owners also asked the trial court to issue a temporary injunction prohibiting Mr. Smith from trespassing on their property during the pendency of the lawsuit.[4]

---

[4]The injunction sought in the complaint would nonetheless permit Mr. Smith to remove heavy equipment
(continued...)

On the day the complaint was filed, the trial court issued the temporary restraining order sought by the Owners. After a hearing, the trial court granted a temporary injunction enjoining Mr. Smith from entering onto the Owners' property, "specifically the Land Lot, Causeway, and island property."[5]

On November 29, 2012, Mr. Smith filed an answer and a counterclaim. He alleged a number of causes of action in the counterclaim. By the time of trial, however, the only counterclaim that remained was Mr. Smith's claim for private condemnation of an easement, pursuant to Tennessee Code Annotated § 54-14-102. This statute provides:

> (a) Any person owning any lands, ingress or egress to and from which is cut off or obstructed entirely from a public road or highway by the intervening lands of another, or who has no adequate and convenient outlet from the lands to a public road in the state, by reason of the intervening lands of another, is given the right to have an easement or right-of-way condemned and set aside for the benefit of the lands over and across the intervening lands or property.

Tenn. Code Ann. § 54-14-102(a) (2008). The counterclaim sought to condemn property for the easement that included the Byrnes' property. As a result, Mr. Smith was later permitted to file a "third party complaint" against the Byrnes, essentially adding them as defendants in his counterclaim against the Owners.[6]

On April 22, 2013, the trial court conducted a trial in the matter.[7] The witnesses testified to the facts outlined above; many were undisputed. Mr. Walker (Plaintiff) and Mr. Smith (Defendant) agreed that (1) the only land route to get from the mainland to Mr. Smith's island property is over the causeway; (2) to access the mainland-end of the causeway from the nearest public road (Mullins Cove Road), Mr. Smith would have to use the paved driveway situated on the mainland property owned by the Byrnes and the Owners, and then open the causeway gate on the Owners' property; and (3) once he reached the island-end of

---

[4](...continued)
he had already brought onto Paradise Island.

[5]In connection with the temporary injunction, the Owners were required to increase their bond to a total of $5,000.

[6]The trial court permitted Mr. Smith to add Clifford and Carol Byrne as "third-party defendants," but they are not "third-party defendants" within the meaning of Tennessee Rule of Civil Procedure 14.

[7]The Byrnes were not represented by counsel at the trial. Mr. Byrne was present at the hearing, but Mrs. Byrne was not.

the causeway, to get to his own island lot, Mr. Smith would have to traverse the road on the Owners' island property, which is adjacent to Mr. Smith's island parcel.

At the time of trial, Mr. Smith testified, he was not using the causeway to access his Paradise Island property; he accessed it by boat only. He said that he would prefer to access his island property by land, using the causeway. In connection with permission to use the causeway, Mr. Smith said, he did not object to helping pay for the maintenance of the causeway, the driveway on the mainland property, and the road on the island adjacent to his property. He acknowledged that he had not sought a permit to build a separate means of land access across the river to Paradise Island.

One of the Plaintiff Owners, Mr. Walker, testified as well. He said that the Purchasers, his predecessors in interest, purchased the property in question in 1977, and attached the Corps of Engineers permit to build the causeway to the warranty deed he received from them. He testified that Mr. Smith's predecessor, Ms. Harris, did not contribute to the cost of building the causeway. Under the Corps of Engineers permit, Mr. Walker said, the Owners are obliged to maintain the causeway, and they had maintained both the causeway and the paved driveway linking it to the public road on the mainland. He said that some of the Paradise Island homeowners "volunteered a little time to maintain that causeway." Mr. Walker asserted that the Corps of Engineers permit required the Owners to remove the causeway at their own expense if they decided to stop using it.

Mr. Walker indicated that the driveway connecting the mainland end of the causeway to the public road was so narrow that it would accommodate only one car at a time. He described the paved driveway as "very steep and dangerous," and his description was corroborated by photographs of the driveway showing that it was decrepit, decaying, and generally in poor condition.

Describing the causeway in his testimony, Mr. Walker indicated that it too was so narrow that it would accommodate only one car at a time. He said that the causeway was intended for very limited use, only for the Owners and the few people who lived on the island, and was not built to withstand construction traffic or heavy equipment. He explained, "That's why it's actually just a little one-lane bridge." Mr. Walker said that the house most recently erected on the island was built with the use of backhoes and a bulldozer. Though he did not know if transporting this equipment from the mainland to the island damaged the causeway itself, Mr. Walker felt that it did considerable damage to the driveway leading to the causeway. He did not "believe the causeway could withstand a lot of heavy equipment or material handling trucks coming across it."

Mr. Walker objected to Mr. Smith's request to be allowed to use the causeway. He claimed that he was concerned that Mr. Smith would subdivide his lot.[8] This, Mr. Walker insisted, would generate too much traffic for the causeway to withstand.

At the conclusion of the hearing, the trial court issued an oral ruling, holding in favor of the Owners and against Mr. Smith on Mr. Smith's counterclaim. The court reasoned:

> I find that that issue is decided in favor of [the Owners], and that this causeway lies entirely on [the Owners'] property . . . on where it begins closest to Mullins Cove Road and where it touches their lands then on [Paradise] Island . . ., so I find that Mr. Smith owns no interest in that causeway.
> I think the second thing is whether he's cut off . . . by the intervening lands of another, and . . . we're dealing with water rather than with land, and I think there is no question that [Mr. Smith is] not cut off by the lands of another, because as I pointed out, this body of water is not owned by [the Owners], or for that matter owned by Mrs. Harris. It's water that's owned by either the government or some agency other than either of those.
> So what has arisen is what is the right that [the Owners] have in this causeway. Is it an interest in land in and of itself? . . .
> It would seem to me then that [the Owners] have no ownership rights in this property, and so what was referred to as a causeway or a land bridge, I find is not land, it's just a temporary structure that could be taken away or removed at any time.
> I also find then in favor of [the Owners] that they own no intervening lands that keep[] Mr. Smith from gaining access to his property.

The trial court recognized that barring Mr. Smith from using the causeway meant that "the only way to get [to the island property] is either by barge or . . . to build some sort of causeway or bridge." It observed that Mr. Smith had taken no action to build his own land bridge.

On June 12, 2013, the trial court entered a written order consistent with its oral ruling and incorporating it by reference. It made specific findings of fact and conclusions of law:

> b. That the body of water between [Mr. Smith's] island property and Mullins Cove road is controlled by the Army Corp[s] of Engineers, the

---

[8]Mr. Walker did not testify as to how this concern informed the Purchasers' decision to subdivide their own island property.

Tennessee Valley Authority, or some other governmental entity, and not by the parties to this case;

      c. That the causeway at issue in this case begins and ends entirely on the lands belonging to [the Owners];

      d. That [Mr. Smith] has no interest in the causeway;

      e. That [the Owners] have no ownership rights in the causeway, which is not land, but a temporary structure that could be taken away or removed at any time;

      f. That the intervening lands closest to [Mr. Smith's] island property and being the most convenient method of gaining access to the island property are the intervening lands of [Mr. Smith's] Grantor, Ms. Rachel Lou Harris;

      g. That [the Owners] own no intervening lands that prevent [Mr. Smith] from gaining access to his property;

      h. That [the Owners] have standing to seek an injunction by virtue of the fact that they are the holders of the Permit, which confers the right to build, maintain, transfer, and therefore, control the Causeway; and

      i. That the Causeway is not a structure open to the public.

Thus, the trial court held that Section 54-14-102, the private condemnation statute, does not apply because the Owners and the Byrnes "do not own any intervening lands between [Mr. Smith's] island property and Mullins Cove Road," and so it dismissed Mr. Smith's counterclaim on that basis. It granted the Owners' request for a permanent injunction prohibiting Mr. Smith "from trespassing on their lands and the Causeway," with limited exceptions not applicable here.

On June 25, 2013, Mr. Smith filed a motion to alter or amend, arguing that the trial court erred in dismissing his private condemnation action and in granting the permanent injunction. He further argued that the trial court lacked "subject matter jurisdiction over the causeway since the causeway is located within navigable waters and, therefore, jurisdiction is exclusively with the federal government." On July 16, 2013, the trial court issued an oral ruling finding that it had subject matter jurisdiction over the case and denying the motion to alter or amend. On August 6, 2013, the trial court entered a written order incorporating its oral ruling. Mr. Smith now appeals.

## ISSUES ON APPEAL AND STANDARD OF REVIEW

On appeal, Mr. Smith raises three issues for our review:

1. Whether the trial court erred in its interpretation of the provisions of Section 54-14-102 in denying Mr. Smith access over lands of the Owners and the Byrnes to reach his landlocked property?

2. Whether the trial court erred in enjoining Mr. Smith from utilization of and access to the causeway connecting lands of the Owners?

3. Whether the trial court lacked jurisdiction to enjoin Mr. Smith from utilization of the causeway?

The interpretation of a statute is a matter of law, which we review *de novo* on appeal, giving no deference to the decision of the trial court. ***Pickard v. Tenn. Water Quality Control Bd.***, 424 S.W.3d 511, 518 (Tenn. 2013). In construing a statute, we "ascertain and . . . give effect to the General Assembly's purpose without unduly restricting or expanding the statute beyond its intended scope." ***Id.*** The appellate court must apply the plain language of the statute, giving the "words their natural and ordinary meaning in light of the context in which they are used." ***Id.***

Because the pertinent facts in this case are not disputed, the issue of whether the trial court erred in enjoining Mr. Smith from using the causeway presents a question of law, which we consider under the *de novo* standard of review. ***In re Estate of Chastain***, 401 S.W.3d 612, 617-18 (Tenn. 2012).

Subject matter jurisdiction involves the trial court's lawful authority to adjudicate the controversy brought before it. ***Northland Ins. Co. v. State***, 33 S.W.3d 727, 729 (Tenn. 2000). The issue of whether a court has subject matter jurisdiction is a question of law, reviewed *de novo* with no presumption that the decision of the trial court is correct. ***Id.***; ***see also Peck v. Tanner***, 181 S.W.3d 262, 265 (Tenn. 2005).

We consider subject matter jurisdiction first, and then the other issues raised by Mr. Smith on appeal.

## ANALYSIS

## Subject Matter Jurisdiction

We must first address the threshold inquiry of whether the trial court had subject matter jurisdiction to enjoin Mr. Smith from utilizing the causeway. "Courts derive their subject matter jurisdiction from the Constitution of Tennessee or from legislative act and cannot exercise jurisdictional powers that have not been conferred directly on them expressly or by necessary implication." *Dishmon v. Shelby State Comm. College*, 15 S.W.3d 477, 480 (Tenn. Ct. App. 1999) (citations and internal citations omitted). "[P]arties cannot confer subject matter jurisdiction on a trial or an appellate court by appearance, plea, consent, silence, or waiver," and "orders entered by courts without subject matter jurisdiction are void." *Id.* The issue of subject matter jurisdiction "may be raised at any time in any court." *Johnson v. Hopkins*, No. M2012-02468-SC-S09-CV, 2013 WL 6699490, at *2 (Tenn. Dec. 19, 2013).

On appeal, Mr. Smith argues that the trial court did not have subject matter jurisdiction to enjoin him from using the causeway because the provisions of the River Harbors Act of 1899, 33 U.S.C. § 401, *et seq.*, specifically provide that the waters of the United States are under federal jurisdiction. He also points out that the applicable federal regulations provide that the Corps of Engineers is authorized to control the activities of the waters in the United States. *See* 33 C.F.R. § 320.1. Since the causeway is in navigable waters and the Corps of Engineers has authority over activities in navigable waters, he claims, the trial court below did not have jurisdiction to adjudicate matters involving the causeway. Other than the federal statutes and regulations, Mr. Smith cites no authority to support this argument.

This lawsuit was originally filed by the Owners to prevent Mr. Smith from using their property and the causeway; once sued, Mr. Smith filed a counterclaim seeking private condemnation of an easement over the Appellees' property so as to gain access to the causeway. Initially, the Appellees claimed that the causeway was "privately owned" by them. The Appellees now concede that the Corps of Engineers permit to build the causeway did "not convey any property rights, either in real estate or material, or any exclusive privileges." In fact, in an appraisal filed in the trial court below, the attorney for the Corps of Engineers "firmly stated" to the appraiser "that there were no property rights conveyed for the causeway and therefore, no private ownership interest exists concerning the causeway." Thus, as noted by the trial court, none of the Appellees has any ownership interest in the causeway itself.

Under these circumstances, the issue before us is whether the trial court had jurisdiction to ascertain the parties' rights as to the causeway in the context of a state law claim for private

condemnation. Ownership of the causeway is not at issue. Mr. Smith has cited no authority establishing that the trial court did not have jurisdiction to construe the Corps of Engineers permit in the context of a claim filed pursuant to state law, and we have found none.

A similar argument was made and rejected by this Court in ***Moscheo v. Polk County***, No. E2008-01969-COA-R3-CV, 2009 WL 2868754, at *7 (Tenn. Ct. App. Sept. 2, 2009). In that case, the plaintiff filed an action against the county, disputing a local tax he was required to pay for using the Ocoee River, which he alleged was a "navigable waterway" subject to the authority of the federal government. The county argued that the trial court did not have subject matter jurisdiction to determine whether the river was a "navigable waterway" under the federal regulations, because those regulations indicated that "conclusive determinations of navigability can be made only by federal Courts." ***Moscheo***, 2009 WL 2868754, at *6 (quoting 33 C.F.R. § 329.14). The appellate court disagreed, holding that a state court has the authority to interpret the federal statutes and regulations absent a conclusive determination by a federal court. The court reasoned: "Absent specific congressional enactment to the contrary, state courts have inherent authority and concurrent jurisdiction with the federal courts to adjudicate claims arising under federal law pursuant to the doctrine of 'dual sovereignty.' State courts therefore have the authority to render binding decisions based on their interpretation of federal law unless a federal statute provides for exclusive federal jurisdiction. ***Id.*** at *7 (citing ***ASARCO v. Kadish***, 490 U.S. 605, 617 (1989)). Therefore, because federal courts were given *conclusive* authority (not *exclusive* authority) to make determinations regarding navigability, and no federal court had made a conclusive decision about the Ocoee River, the state court had the authority to adjudicate the issue in that case.

Under the reasoning in ***Moscheo***, we must conclude that the trial court had subject matter jurisdiction to adjudicate the issue presented in the instant case. Mr. Smith has cited no federal statute or regulation providing that federal courts have exclusive jurisdiction over all matters involving U.S. navigable waterways. In the absence of any congressional enactment indicating otherwise, we conclude that the trial court had subject matter jurisdiction over issues involving these parties' rights with respect to the causeway.

**The Causeway**

Having determined that the trial court had subject matter jurisdiction over this case, we consider the substantive issues presented on appeal. Mr. Smith argues that the trial court erred in enjoining him from using the causeway. He first points out that the causeway is not actually real property at all. Rather, it is a removable structure, fill material situated on navigable waters. It is well established that title to the bed of navigable waters may not be

privately owned, but is held in trust for the public.[9] *See Uhlhorn v. Keltner*, 637 S.W.2d 844, 846 (Tenn. 1982); *State v. West Tenn. Land Co.*, 158 S.W. 746, 750 (Tenn. 1913); *Cunningham v. Prevow*, 192 S.W.2d 338, 341 (Tenn. Ct. App. 1945). Moreover, the Appellees have neither an ownership interest in the causeway nor the exclusive right to use it. Therefore, Mr. Smith claims, the trial court had no basis for enjoining him from using the causeway.

The Appellees concede that they have no ownership interest in the causeway itself. They claim, however, that the Corps of Engineers permit implicitly gives them the right to control who uses the causeway. In support, the Appellees point out that the original Purchasers went to great expense and effort to build the causeway, and they argue that it would just not be fair to allow Mr. Smith equal use of it. The Appellees also note that they are charged with maintaining the causeway and must notify the Corps of Engineers if they transfer their interest in the permit to anyone else. Finally, there is no access to the causeway except from the Appellees' property. These facts, they contend, imply that the Appellees (or at least the Owners) were given the right to control the use of the causeway.

With due respect to the Appellees' equity argument, this Court is not at liberty to ignore the plain language of the permit, which states: "[T]his permit does not convey any property rights, either in real estate or material, or any exclusive privileges . . . ." This is corroborated by the appraisal in the record that recites the statement by the Corps of Engineers attorney that "there were no property rights conveyed for the causeway and therefore, no private ownership interest exists concerning the causeway." Clearly, in the absence of any express grant from the Corps of Engineers, the Appellees have no right to control the use of the causeway.

Whatever the original motivation of the Sextons in seeking the permit or the Purchasers in building the causeway,[10] they took these actions with full knowledge that the causeway was built on navigable waters and that they acquired no property rights or exclusive right to use the causeway. The Owners concede that the causeway is available for public use. Moreover, since the causeway is built on navigable waters, the power to exercise control over it rests squarely with the Corps of Engineers, as authorized by Congress. *See Moscheo*, 2009 WL 2868754, at *15. The Corps did not limit accessibility to the causeway in the permit or by

---

[9]The Appellees acknowledge that the causeway is not land: "It is a manmade structure like a bridge or a dock that may be removed just as it was constructed." They further acknowledge that, "even if [the causeway] were land, it is not owned by Walker or Elder." (See Brief at 15).

[10]We note that, upon receiving the Corps of Engineers permit, the Sextons promptly sold the island property to the Purchasers. Once the Purchasers erected the causeway, they promptly subdivided the island property and sold the subdivided lots, complete with causeway access.

any other means. Under these circumstances, we must conclude that the trial court erred in enjoining Mr. Smith from using the causeway.

We next address Mr. Smith's argument that the trial court erred in enjoining Mr. Smith from traversing the Appellees' property to access the causeway and in rejecting Mr. Smith's claim for private condemnation of an easement over the Appellees' property to get to the causeway.

## Private Condemnation

The trial court held that Section 54-14-102 is inapplicable in this case because the Appellees' property does not constitute "intervening lands" that cut off Mr. Smith's access to a public road or highway. Rather, the trial court held, "the most convenient method of gaining access to [Mr. Smith's] island property are the intervening lands of" Ms. Harris. Ms. Harris's property is on the mainland, and the only way to get from Mr. Smith's island property to Ms. Harris's mainland property, or vice versa, is by boat. The trial court also made a factual finding that the Appellees' property does not physically stand in the way of Mr. Smith's access to his island property, because he can get from his island property to a public road by boat. The trial court reasoned that, in that sense, Mr. Smith's property is not landlocked because "we're dealing with water rather than with land."

Under Tennessee's private condemnation statute, Section 54-14-102(a), a property owner has the right to condemn an easement over another person's private "intervening property" if (1) the intervening property cuts off or obstructs the property owner's ingress or egress from his own property to a public road or highway, or (2) because of the other person's intervening property, the owner has no "adequate and convenient" access to a public road. Tenn. Code Ann. § 54-14-102(a); *see **Barge v. Sadler**, 70 S.W.3d 683, 688 (Tenn. 2002) (reviewing historical background of private condemnation statutes). The private condemnation statutes provide the procedure for cases in which one person's real property is landlocked by the real property of another:

> When the lands of any person are surrounded or enclosed by the lands of any other person or persons who refuse to allow to the person a private road to pass to or from the person's lands, it is the duty of the county court, on petition of any person whose land is surrounded, to appoint a jury of view, who shall, on oath, view the premises, and lay off and mark a road through the land of the person or persons refusing, in a manner as to do the least possible injury to those persons, and report to the next session of the court, which court shall, in accordance with this part, grant an order to the petitioner to open such road . . . .

-13-

Tenn. Code Ann. § 54-14-101(a)(1) (2008). "Thus, the statute provides that once the court finds that property is landlocked, a jury of view must be appointed to determine the portion of private, adjoining land where the placement of an easement will be least injurious" to the property on which the easement placed. *Barge*, 70 S.W.3d at 688.

It is well established that, because the power of eminent domain is in derogation of private property rights, "statutes conferring the power to affect private property rights without the owner's consent must be strictly construed." *Id.* (citing *Clouse v. Garfinkle*, 231 S.W.2d 345, 348 (Tenn. 1950)); *see Design Concept Corp. v. Phelps*, No. E1999-00259-COA-R9-CV, 2000 WL 2000 WL 782063, at *8 (Tenn. Ct. App. June 20, 2000). While private condemnation will not be granted based on mere convenience, it will not be withheld simply because the party who seeks condemnation has, or may obtain, another outlet which is not adequate and convenient. *See Lay v. Pi Beta Phi, Inc.*, 207 S.W.2d 4, 6 (Tenn. Ct. App. 1947).

Mr. Smith argues that Section 54-14-102(a) is applicable in this case because relief under the statute is available in "every situation where a party is without an adequate and convenient outlet to a public road." *See De Busk v. Riley*, 289 S.W. 493, 495 (Tenn. 1926), *cited in Fite v. Gassaway*, 184 S.W.2d 564, 566 (Tenn. Ct. App. 1944). He claims that he has no "adequate and convenient outlet to a public road" from his island property because the only access by land to his property is over the causeway, and the only access to the causeway is through the Appellees' property. Mr. Smith acknowledges that he can access his property by boat, but he argues that boat access is not an "adequate and convenient" means of getting to his island property. Expecting him to build his own land bridge, Mr. Smith insists, would be so costly and impractical that it cannot be considered to be adequate and convenient under Tennessee law.

In response, the Appellees maintain that the trial court was correct in holding that the private condemnation statute does not apply, because Mr. Smith's island property is surrounded primarily by the Tennessee River, not by the Appellees' land. They reason that Mr. Smith's route from Mullins Cove Road to his island property is not blocked by "intervening lands," but rather by water, and this stems from the fact that Mr. Smith made a decision to buy property on an island that is surrounded by water. Citing cases from other jurisdictions, the Appellees urge this Court to hold that "land accessible by navigable water cannot be landlocked" so as to make its owner eligible for an easement by necessity.[11] If it were

_____

[11]The Appellees also argue that Mr. Smith is not entitled to relief under the private condemnation statute, because "[a]ll navigable waters are public highways" pursuant to Tennessee Code Annotated § 69-1-101. This argument was not made in the trial court below, and arguments not first raised in the trial court are

(continued...)

otherwise, the Appellees suggest, all "waterlocked" lands would be considered "landlocked," and the owners of such property would "always have a right to build a bridge or causeway of some kind to the mainland under the condemnation statute." The Appellees point out that Mr. Smith knew when he bought the island property that it was accessible only by boat: "[Mr. Smith] knew before he closed on the property that the family that built and maintained the causeway would not permit him to use it." Under these circumstances, they argue, he should not be able to take by force that which he knowingly chose not to purchase.

It is undisputed, and Mr. Smith readily acknowledges, that Mr. Smith's property is accessible by boat. In some jurisdictions, this fact alone would defeat a property owner's claim for an easement by necessity over another person's property. As one court put it, "access to a piece of property by navigable waters negates the 'necessity' required for [an easement] by necessity." *Cale v. Wanamaker*, 296 A.2d 329, 333 (N.J. Super. 1972) (discussing cases); *see also Welch v. State*, 908 A.2d 1207, 1212 (Me. 2006); *Murch v. Nash*, 861 A.2d 645, 652 (Me. 2004).

However, "the more modern view" trends away from holding that condemnation is never available to a property owner whose property is accessible by navigable waters. This is particularly true where "the water route is not available or suitable to meet the requirements of the uses to which the property would reasonably be put." *Stansbury v. MDR Dev., L.L.C.*, 889 A.2d 403, 415 (Md. 2006) (quoting *Hancock v. Henderson*, 202 A.2d 599, 602 (Md. 1964)); *see also Berge v. State of Vermont*, 915 A.2d 189, 193 (Vt. 2006) (holding that the rule precluding an easement based on the availability of water access is a rule that has been deemed "archaic and unrealistic for many decades," particularly in light of current modes of transportation).

Tennessee courts have not adopted the rule advocated by the Appellees. Instead, Tennessee courts have held that a private condemnation action is not defeated simply because the person who seeks condemnation may access a public road by going through navigable waters. For example, in *Brady v. Correll*, 97 S.W.2d 448 (Tenn. Ct. App. 1936), the plaintiff owned two tracts of land, a 17.5-acre tract and a 250-acre farm, and the defendant owned a 250-acre tract that separated the plaintiff's smaller tract from his larger farm. The 17.5 acre tract was surrounded by the defendant's property and the Nolachuckey River. The only way to reach the smaller tract by land was to traverse the defendant's property; the plaintiff could also reach the smaller tract by taking a boat or ferry across the river. *Brady*, 97 S.W.2d at 450. The plaintiff filed the lawsuit for private condemnation of an easement, arguing that "there

---

[11](...continued)
waived on appeal. *Barnes v. Barnes*, 193 S.W.3d 495, 501 (Tenn. 2006). Therefore, we decline to address this contention.

was no convenient and adequate means of ingress and egress to and from said [17.5]-acre tract except over the intervening lands of the defendant." *Id.* The trial court granted the relief sought and ordered the plaintiff to pay $300 as damages for the land actually taken. The defendant appealed. On appeal, the ***Brady*** Court upheld the trial court's decision. The appellate court reasoned that, even though the 17.5-acre tract could be reached by boat or ferry, this was not "adequate and convenient." It stated:

> We think under these facts petitioner established his right to invoke the provisions of [the private condemnation statute]. We do not think it could be reasonably said that crossing by boat or ferry with machinery and products of the land would be adequate and convenient. It is not necessary that petitioner show that he has no outlet but only that he has no adequate and convenient one.

*Id.*

Similarly, in ***Lay v. Pi Beta Phi, Inc.***, the plaintiffs bought property on the north side of Little Pigeon River. To get to this property, they also purchased a right-of-way over another person's property. It later turned out that the other person's property was not rightfully owned by the seller, so the transfer of the right-of-way was invalid. The plaintiffs "found themselves the owners of a very valuable piece of land improved as a tourist court, completely landlocked." *Lay*, 207 S.W.2d at 5. To remedy the situation, the plaintiffs entered into a 13-year lease with the defendant to build and maintain, at their own expense, a pier and support for a bridge over the river to a highway, to provide ingress and egress from the plaintiffs' property. In return the plaintiffs agreed to pay the defendant rent of $5 per month.

After a year, the plaintiffs in *Lay* filed a lawsuit against the defendant to condemn a strip of land belonging to the defendants to give them a permanent right of way to their property. The defendant argued that the plaintiffs were not entitled to relief because the plaintiffs had other means to access their property, including the lease that was still in effect. The trial court agreed and dismissed the lawsuit. The plaintiffs appealed.

On appeal, the ***Lay*** Court held that the easement over the strip of land sought by the plaintiffs was the most "adequate and convenient" outlet to a public road for the plaintiffs. *Id.* at 5-6. Following the premise in ***De Busk***, the appellate court observed that the private condemnation statute "has been construed to cover every situation where a party is without an adequate and convenient outlet to a public road." *Id.* at 6 (citing ***De Busk***, 289 S.W. at 495). It held that the statute "does not warrant condemnation as a mere matter of convenience. But relief will not be withheld because the party seeking to condemn has

another outlet which is not adequate and convenient or because, at great expense, another outlet might be provided which would still be inadequate." *Id.* (internal citations omitted). The appellate court rejected several suggested options for ingress and egress for the plaintiffs, such as requiring the plaintiffs to condemn more expensive property and build bridges. It found that those other options were either impractical or too costly. The condemnation sought by the plaintiffs, the *Lay* court held, was "the most feasible from every standpoint," and would not be rejected simply because the plaintiffs' property could be accessed by boat. *Id.* Therefore, the appellate court reversed the trial court's dismissal of the lawsuit and held that the plaintiffs were entitled to condemn the right of way owned by the defendant.[12]

Thus, according to the reasoning in both *Brady* and *Lay*, a property owner's claim for private condemnation of an easement over another person's property is not defeated simply because he has access to a public road by boat. Rather, private condemnation is an available remedy in "every situation where a party is without an adequate and convenient outlet to a public road." *De Busk*, 289 S.W. at 495, *cited in Fite*, 184 S.W.2d at 566. Therefore, we must respectfully hold that the trial court below erred in holding that the fact that Mr. Smith can get from a public road on the mainland to his island property by boat automatically defeats his cause of action for private condemnation.

Under the statute and the caselaw, it appears that the proper inquiry is whether Mr. Smith's water access is an "adequate and convenient outlet to a public road" under the particular facts in this case. *See Brady*, 97 S.W.2d at 450 ("While it is shown that [accessing the property by boat or ferry] was at one time made use of, the proof shows that it was never satisfactory and that it was resorted to only because of necessity."); *see also Taylor v. West Va. Pulp. & Paper Co.*, 137 S.E.2d 833, 836 (N.C. 1964) (if access by water affords "adequate and proper means of ingress and egress," then plaintiff is not entitled to easement over another's property).

Reviewing the record in this case, Mr. Smith testified that after he was blocked from using the causeway, he was able to reach his island property by boat. He also testified that access by boat is not an adequate or convenient means of access to a public road. The Appellees put on no evidence indicating that access by boat is adequate or convenient under the circumstances of this case; instead, they relied on arguing that access by boat automatically defeats any right of condemnation. As concluded in *Brady*, based on the record before us,

---

[12]The appellate court in *Lay* also held that the existence of the lease did not preclude the condemnation, because the lease gave the plaintiffs access to their property only temporarily, so a permanent easement was necessary. *Lay*, 207 S.W.2d at 7.

boat access for Mr. Smith cannot be deemed reasonably adequate and convenient. One court aptly described the obvious perils of water access:

> [In having only water access, the] plaintiff would have no reasonably consistent, *practical* means of reaching his property; rather, he would be subject to the constant vicissitudes of motor boats, weather, and water conditions.
>
> . . .
>
> Plainly, without use of the road, plaintiff would lack any practical means of access for the "reasonable enjoyment of his land." While the property may be accessible by water for part of the year, the State made no real claim — and the trial court here made no finding — that this represents access adequate for reasonable enjoyment of the property. We depend on roads and automobiles for transporting not only our family and friends, but all our basic necessities to and from our homes, and it is a quaint but ultimately pointless fiction to pretend that water — much less ice — represents a sufficient substitute.

*Berge*, 915 A.2d at 192-93 (footnote omitted).

The trial court below indicated that Mr. Smith also had the option of applying for a permit from the Corps of Engineers to build his own causeway from Ms. Harris's property to his own. A similar argument was rejected in *Lay*. The defendant in *Lay* argued that the plaintiffs could build two bridges and condemn other property more valuable than the defendants' property. *See Lay*, 207 S.W.2d at 6. The appellate court found that these options were not practical, and that "the place where the present bridge is located is the most feasible from every standpoint." *Id.* Based on the record in this case, requiring Mr. Smith to build a second causeway is likewise neither practical nor reasonable.

In sum, allowing Mr. Smith to use the Appellees' property to gain access to the causeway is Mr. Smith's only adequate and convenient outlet to a public road. "It is not necessary that petitioner show that he has no outlet but only that he has no adequate and convenient one." *Brady*, 97 S.W.2d at 450. Boat access to and from Mr. Smith's property is not adequate and convenient under the circumstances. Requiring Mr. Smith to build his own land bridge to gain access to a public road from his property, when the causeway at issue already exists so close to his property, is too costly and impractical.

In his testimony, Mr. Walker expressed concern that Mr. Smith's use of the Appellees' property for ingress and egress to his property over the causeway would damage the paved driveway, the causeway, or the Owners' property exiting the causeway. *Id.* This is a valid

concern but not sufficient reason to bar the condemnation altogether. A jury of view will be appointed to determine the proper easement and the price Mr. Smith must pay to fairly compensate the Appellees for the easement granted. ***See Barge***, 70 S.W.3d at 688 (noting that the jury of view will assess the damages the petitioner must pay for the use of the easement). This price can take into account the increased burden on the Appellees and the damage that is likely to the property from Mr. Smith's easement.

Therefore, we reverse the trial court's decision that the private condemnation statute is inapplicable in this case. We hold that Mr. Smith is entitled to private condemnation of an easement over the Appellees' property on the mainland end of the causeway and on the island end of the causeway, so that he may access Mullins Cove Road from his property. We also vacate the injunction prohibiting Mr. Smith from accessing the Appellees' property or using the causeway. The case must be remanded for further proceedings.

## CONCLUSION

The decision of the trial court is reversed, the injunction is vacated, and the cause is remanded for further proceedings consistent with this opinion. Costs on appeal are to be taxed to the Appellees, one half to Robert Walker and Susan Elder and one half to Clifford Byrne and Carol Byrne, for which execution may issue, if necessary.

_____
HOLLY M. KIRBY, JUDGE